**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
Kolin Tang (SBN 279834)
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs and the Proposed Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILL SCHEPLER and ADRIAN GARCIA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN HONDA MOTOR CO., INC., <br><br> Defendant. | CIVIL ACTION NO. 2:18-cv-6043-GW-AFM <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF ADRIAN GARCIA'S CLAIMS** <br><br> Third Amended Complaint Filed: August 9, 2019 <br><br> Judge:    George W. Wu <br> Hearing:  October 1, 2020 <br> Time:     8:30 a.m. <br> Courtroom: 9D <br><br> ***REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL*** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................i

I.      INTRODUCTION ...................................................................................1

II.     SUMMARY OF THE EVIDENCE .........................................................3

        A.      AHM's Common False and Misleading Misrepresentations and
                Omissions.......................................................................................3

        B.      The Common Seat Belt Configuration Defect.................................4

        C.      The Garcias' Experience .................................................................5

III.    SUMMARY JUDGMENT STANDARD ..................................................6

IV.     ARGUMENT............................................................................................7

        A.      Mr. Garcia's Consumer Protection Claims Are Supported by
                Material Evidence...........................................................................7

                1.      AHM's Compliance with FMVSS 571.10 and 49 C.F.R.
                        571.3 Does Not Preempt Mr. Garcia's Safety Allegations ....7

                2.      There Is Material Evidence That Mr. Garcia's CR-V Cannot
                        Safely Seat Five Passengers ....................................................9

                3.      AHM's Misrepresentations that the CR-V Could Safely
                        Accommodate Five Passengers Gave Rise to Mr. Garcia's
                        Claims ..................................................................................11

        B.      AHM's Misrepresentations Caused Mr. Garcia Injury and Violated
                California's Consumer Protection Laws ........................................12

        C.      Mr. Garcia Has Presented Evidence of Damages ...........................16

        D.      Mr. Garcia's Omission-Based Claims Are Also Supported By
                Material Evidence.........................................................................17

        E.      Mr. Garcia's UCL and FAL Claims Are Proper.............................19

        F.      Summary Judgment Is Not Warranted On Mr. Garcia's Requests For
                Injunctive Relief ..........................................................................22

G.   Mr. Garcia's Seat Belt Warranty Claim Is Supported By Material Evidence..................................................................22

V.   CONCLUSION..........................................................................23

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                        <u>Page</u>

*Aberin v. Am. Honda Motor Co., Inc.*,
  2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ...................................................20

*Adkins v. Comcast Corp.*,
  2017 WL 3491973 (N.D. Cal. Aug. 1, 2017)............................................. 19-20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).............................................................................................7

*Bentley v. United of Omaha Life Ins. Co.*,
  2016 WL 7443189 (C.D. Cal. June 22, 2016)....................................................20

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .............................................................................15

*Briseno v. ConAgra Foods, Inc.*,
  674 F. App'x 654 (9th Cir. 2017) .......................................................................16

*Cabrales v. Castle & Mortg. LLC*,
  2015 WL 3731552 (E.D. Cal. June 12, 2015).....................................................20

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................................................7

*Cisco Sys. Inc. v. Link US, LLC*,
  2019 WL 6682838 (N.D. Cal. Dec. 6, 2019)......................................................14

*Clayton v. Landsing Pac. Fund, Inc.*,
  2002 WL 1058247 (N.D. Cal. May 9, 2002)................................................. 18-19

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011) ............................................................................18

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .............................................................................22

*Degelmann v. Advanced Med. Optics, Inc.*,
  659 F.3d 835 (9th Cir. 2011) .....................................................................13, 15

*Deras v. Volkswagen Grp. of Am., Inc.,*
  2018 WL 2267448 (May 17, 2018) ...................................................................20

*Durkee v. Ford Motor Co.,*
  2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ...................................................19

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.,*
  2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) .................................................20

*Fresno Motors, LLC v. Mercedes-Benz USA, LLC,*
  852 F. Supp. 2d 1280 (E.D. Cal. 2012) ...........................................................18

*Geier v. Am. Honda Motor Co.,*
  529 U.S. 861 (2000) ...........................................................................................8

*Hodsdon v. Mars, Inc.,*
  891 F.3d 857 (9th Cir. 2018) ...................................................................... 17-18

*In re Arris Cable Modem Consumer Litig,*
  327 F.R.D. 334 (N.D. Cal. 2018) .....................................................................15

*In re Ford Tailgate Litig.,*
  2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) .................................................19

*In re Sony PS3 Other OS Litig.,*
  551 F. App'x 916 (9th Cir. 2014) .....................................................................20

*In re Tobacco II Cases,*
  46 Cal. 4th 298, 207 P.3d 20 (2009) ................................................................14

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practice & Prod. Liab. Litig.*
  959 F. Supp. 2d 1244 (C.D. Cal. 2013) ............................................................15

*In re Vioxx Class Cases,*
  180 Cal. App. 4th 116 (2009) ...........................................................................20

*In re W. States Wholesale Nat. Gas Antitrust Litig.,*
  715 F.3d 716 (9th Cir. 2013) ..............................................................................7

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.,*
  578 F. Supp. 2d 1229 (C.D. Cal. 2008) ............................................................18

*LiMandri v. Judkins,*
   52 Cal. App.4th 326 (1997) .................................................................. 17-18

*Magnetar Techs. Corp. v. Intamin, Ltd.,*
   801 F.3d 1150 (9th Cir. 2015) ................................................................ 16

*Moss v. Infinity Ins. Co.,*
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) .................................................. 19

*Munning v. Gap, Inc.,*
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) .................................................. 19

*Muriu v. W. Coast Life Ins. Co.,*
   2017 WL 10592124 (C.D. Cal. May 25, 2017) .................................... 20-22

*Nguyen v. Nissan N. Am., Inc.,*
   932 F.3d 811 (9th Cir. 2019) ............................................................ 15, 16

*Nguyen v. Nissan N. Am.., Inc.*
   2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ....................................... 20

*People of the State of Cal. v. Chevron Corp.,*
   872 F.2d 1410 (9th Cir. 1989) ................................................................ 21

*Philips v. Ford Motor Co.,*
   2015 WL 4111448 (N.D. Cal. July 7, 2015) ....................................... 19, 20

*Potter v. Chevron Prods. Co.,*
   2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ....................................... 14

*Rhynes v. Stryker Corp.,*
   2011 WL 2149095 (N.D. Cal. May 31, 2011) ......................................... 19

*Rutledge v. Hewlett-Packard Co.,*
   238 Cal. App. 4th 1164 (2015) ............................................................... 20

*Salas v. Toyota Motor Sales, U.S.A., Inc.,*
   2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) ...................................... 19

*Schroeder v. United States,*
   569 F.3d 956 (9th Cir. 2009) .................................................................. 20

*Seegert v. Rexall Sundown, Inc.,*
2020 WL 1674465 (S.D. Cal. Apr. 3, 2020) .......................................................7

*Stengel v. Medtronic Inc.,*
704 F.3d 1224 (9th Cir. 2013) ............................................................................9

*Thompson v. 10,000 RV Sales, Inc.,*
130 Cal. App. 4th 950 (2005) ...............................................................14, 19, 22

*Whittlestone, Inc. v. Handi-Craft Co.,*
  618 F.3d 970 (9th Cir. 2010) ............................................................................20

*Wildin v. FCA US LLC,*
2018 WL 3032986 (S.D. Cal. June 19, 2018) ...............................................20, 21

*Wilens v. TD Waterhouse Grp., Inc.,*
120 Cal. App. 4th 746 (2003) ...................................................................... 13-14

*Williams v. Gerber Prod. Co.,*
552 F.3d 934 (9th Cir. 2008) ................................................................14, 19, 22

*Williamson v. Mazda Motor of Am., Inc.,*
562 U.S. 323 (2011) ........................................................................................8, 9

*Zapata Fonseca v. Goya Foods Inc.,*
2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ....................................................19

*Zobmondo Entm't, LLC v. Falls Media, LLC,*
602 F.3d 1108 (9th Cir. 2010) ............................................................................7

**Statutes**

Cal. Bus. & Prof. Code § 17205 .......................................................................21

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...................................................... 2-3

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ...................................................... 2-3

**Rules**

Fed.R.Civ.P. 8 ....................................................................................................21

1

**<u>Regulations</u>**

2

3   49 C.F.R. 571.3 ...........................................................................................7, 8

4   49 C.F.R. § 571.10 ...................................................................................... 7-9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     __INTRODUCTION__

As this Court recognized in denying the Motion to Dismiss filed by Defendant, American Honda Motor Co. ("AHM" or "Defendant"), Plaintiffs, Bill Schepler ("Mr. Schepler") and Adrian Garcia ("Mr. Garcia") (collectively, "Plaintiffs"), allege that AHM "deceptively markets and advertises the [2017 and 2018 model year Honda] CR-V as having a seating capacity for five people with three-point seat belts at all seating positions, when, in fact, if there are three adult passengers or even a single car seat, the passengers cannot simultaneously buckle their seat belts *__safely__*."  Final Ruling on AHM's Motion to Dismiss ("Final Ruling"), Dkt. No. 42, at 2, 5-6 (emphasis added).[1]  Since prevailing on AHM's motions, Plaintiffs have adduced material evidence in support of those allegations, which they submitted to the Court in support of their Motion for Class Certification.  Motion for Class Certification, Dkt. No. 81, at 3-12.

AHM's Motion for Summary Judgment (Dkt. No. 110) ("MSJ" or "Motion") ignores Plaintiffs' allegations and material evidence.  Despite AHM's attempt to muddy the issues by pointing to the irrelevant idiosyncrasies of Mr. Garcia's individual buying and driving experience, the salient material facts are true as alleged: he purchased his CR-V reasonably believing AHM's false and misleading representations and omissions that the CR-V could safely

---

[1] Though the Court was addressing the First Amended Complaint ("FAC") (Dkt. No. 29) in that order, there are no material factual differences with respect to the general allegations regarding the CR-V's safety defect between the FAC, the Second Amended Complaint ("SAC"), Dkt. No. 43, and the operative Third Amended Complaint ("TAC"), Dkt. No. 66.  The SAC amended Mr. Schepler's breach of warranty claim to clarify that it was made under Illinois law (Final Ruling, at 15; SAC; Minutes of Ruling on AHM's Motion to Dismiss SAC, Dkt. No. 56), while the TAC added Mr. Garcia, a California resident, as a named plaintiff, his experience with his CR-V, as well as the California counterparts to the Illinois consumer protection and breach of express warranty claims asserted by Mr. Schepler.  Plaintiffs' Motion for Leave to File TAC, Dkt. No. 62, at 2; TAC.

accommodate three passengers in the backseat, with or without a car seat. Meanwhile, none of the substantive legal or factual arguments AHM makes in support of its Motion have any merit.

First, Defendant claims that its five-passenger representations are "legally true" because the CR-V complies with certain sections of the Federal Motor Vehicle Safety Standards ("FMVSS"). This is essentially a federal preemption argument, which AHM avoided labeling as such, likely because there is no legislative or regulatory basis for invoking preemption.

Second, AHM essentially re-hashes a rejected argument from its motion to dismiss, claiming that its five-passenger representations are "factually true" because it is physically possible for three passengers to belt themselves in to the CR-V's backseat. *See* AHM's Motion to Dismiss Amended Complaint, Dkt. No. 33, at 13-17; Final Ruling, at 5-6. But that fact was never in dispute— Plaintiffs never alleged that the CR-V cannot accommodate three buckled passengers in the rear seat. Instead, as noted above, and as the Court recognized, the issue is whether those three passengers can do so ***safely***. The material evidence adduced in this case establishes that they cannot.

Third, AHM claims that Mr. Garcia suffered no injury because he had the opportunity to take a test drive to assess the CR-V's rear seat belt configuration, so he ostensibly "received exactly what he bargained for." In other words, according to Defendant, it cannot be liable for marketing the CR-V as a five-passenger vehicle because Mr. Garcia is solely responsible for checking the quality and attributes of the CR-V, regardless of any false or misleading representations AHM may have made. This is exactly the type of *caveat emptor* defense that California's consumer protection laws were enacted to extinguish.

Fourth, Defendant urges the Court to dismiss Mr. Garcia's UCL and FAL claims[2] because relief available through those equitable claims is duplicative of

---

[2] Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* and

the relief available through Mr. Garcia's legal claims.  This argument should be rejected as both false and premature.  In fact, Mr. Garcia's legal claims do not provide him with the injunctive relief he also seeks.  And, at this juncture, when Mr. Garcia has yet to reach judgment on any of his claims, dismissal of his UCL and FAL claims will deprive him of available alternative avenues of relief.

Fifth, AHM argues that Mr. Garcia lacks standing for injunctive relief requiring Defendant to accurately represent its vehicles' seating capacity because, as with AHM's "no-injury" argument, he will have the opportunity to inspect any future Honda vehicles that he may consider purchasing.  Once again, this type of *caveat emptor* argument defies California's consumer protection laws and is meritless.

Finally, AHM claims that there is no evidence that any seat belt component in the CR-V fails to function properly during normal use, so there is no material evidence to support Mr. Garcia's claim that AHM breached its seat belt warranty.  But, as Plaintiffs' evidence establishes, the seat belt configuration of the backseat is defective because it prevents **two** passengers from simultaneously buckling into the middle and driver's side seat safely.  As a result, all components that cause the defect "fail[] to function properly during normal use" and are, thus, covered by the seat belt warranty.

## II.   SUMMARY OF THE EVIDENCE

### A.   AHM's Common False and Misleading Misrepresentations and Omissions

Plaintiffs have presented evidence of AHM's false or misleading representations that the CR-V could safely seat five passengers, with or without child safety seats.  TAC, ¶¶ 1, 12-20; Final Ruling, at 2 (citing the brochure advertising, press release, owner's guide, and owner's manual); Plaintiffs' Motion for Class Certification, at 3; Pl. Exs. B-E, Dkt. Nos. 81-3, 81-4, 81-5,

False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

81-6 (brochures indicating consistent representations).  At the motion to dismiss stage, AHM argued that there was "no statement about whether five people would fit in the car while a child car seat was present or whether all child car seats can fit in the CR-V" and "three adults can safely sit in the back seat." Final Ruling, at 5.  The Court rejected that argument.  First, the Court found that "a reasonable consumer could have been deceived as to the car's capacity when having at least one child in a car seat present" because AHM had made various "representations affirming the CR-V's five-person seating capacity . . . without disclaiming or narrowing that to just adults" while simultaneously "discuss[ing] the use of child car seats" in other marketing and advertising materials." *Id.* at 6.  Next, it found that, if true, Plaintiffs' allegations that "the rear middle and rear driver's side passenger seat belts cannot be used 'at the same time, without both of the seat belts *overlapping, twisting, or catching*,'" would establish that the CR-V could not safely seat five adult passengers.  *Id.*  (emphasis in original).

AHM's Motion does not dispute that it made the false and misleading representations that are presented by Plaintiffs, and, as discussed next, Plaintiffs have adduced material evidence to support both the child safety seat and the five adult passenger allegations.

### B.    The Common Seat Belt Configuration Defect

As set forth in Plaintiffs' Motion for Class Certification, Plaintiffs' automotive safety expert, Gary R. Whitman, examined the CR-V's rear seat belt configuration and found it to be defective and unreasonably unsafe.  Motion for Class Certification, at 3-5; Pl. Ex. A, Dkt. No. 81-2 (Whitman Report). Specifically, the CR-V positions the inboard anchor/buckle of the seat belt for the left rear occupant position on the inboard side of the left anchor of the center occupant position and encased in a hard rubber boot or casing, which forces the center occupant of the rear seat to twist his/her seat belt either in front of or behind the left rear buckle/latchplate assembly to buckle his/her seat belt if the

left rear seat occupant buckles his/her seat belt.[3] As a result of the configuration, Mr. Whitman found that five people could not fit safely in the CR-V.  Pl. Ex. A, at 26-27 of 29.  Indeed, as Mr. Whitman notes, *the CR-V owner's manual specifically warns against a "twisted" belt or a belt that may be "caught on anything." Id.*, ¶ 14.

Mr. Whitman's assessment is corroborated by █████████████

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████ (Pl. Ex. F, Dkt. No. 81-7, at 47:3-48:15), █████████████████████████████████████

█████████████████████████████ (Pl. Ex. G, Dkt. No. 81-8, at 68:21-69:24).  Indeed, the data derived by the "human factors" expert AHM retained for this litigation, Douglas Young, also supports Mr. Whitman's assessment -- even the arbitrary testing Mr. Young deployed for determining seat belt ease of use shows that the CR-V's rear seat belt configuration significantly increases the buckling and unbuckling times for the left rear occupant when there is a dummy or child seat in the center occupant position.  Pl. Ex. WW (Report of Douglas Young), at 17 (Table 1), 20 (Table 3); Pl. Ex. II (Declaration of Gary R. Whitman), ¶¶ 7-12.

### C.    The Garcias' Experience

Mr. Garcia and his wife, Ms. Johann Zapien (collectively the "Garcias"), began looking for a new vehicle after Ms. Zapien became pregnant with their second child, in or around August 2017.  Pl. Ex. JJ (Deposition of Adrian Garcia), at 52:6-53:2.  To accommodate his growing family, Mr. Garcia specifically looked for a vehicle with a five-passenger capacity so that an adult

---

[3] Mr. Whitman illustrates these conditions in his Report.  Pl. Ex. A, ¶¶ 8 (Figures 1-4), 9 (Figures 7-14).

could be situated in the back with two children, and he saw such representations for the CR-V set forth on the Honda dealership's website. *Id.* at 53:3-17, 54:5-20, 55:24-25.  The Garcias and their daughter visited the Honda dealership twice to test drive the CR-V in the month or two prior to purchasing it on or about March 3, 2018. *Id.* at 45:23-25, 56:21-57:12.

Shortly after purchasing the CR-V, the Garcias discovered that it could not seat three passengers safely in the backseat.  Mr. Garcia was able to squeeze his mother into the backseat with his children in car seats on both sides on one or two occasions, but it was a struggle, and they had to unlatch the car seat and take it out so that his mother could get in first and then put the car seat back in. *Id.* at 68:12-69:15.  Because of the difficulty caused by the seat belt configuration, which caused the rear middle and rear driver seats' seat belts to overlap, twist, and/or catch when both were simultaneously used, and the resultant safety concerns, Mr. Garcia stopped putting his mother in the rear seat with his children. *Id.* at 69:2-6, 72:25-74:25, 77:1-16, 85:1-9, 85:20-86:6.

Mr. Garcia brought his CR-V into the Honda dealership on April 10, 2019, to see if the service technicians at the dealership could address this safety issue. *Id.* at 84:12-25.  Despite agreeing with Mr. Garcia's assessment and providing initial assurances that the defect could be easily remedied by reversing the buckles, the dealership personnel ultimately informed Mr. Garcia that there was no issue with the seat belt configuration. *Id.* at 86:11-24, 89:20-92:9.  Though Mr. Garcia paid for the CR-V as a vehicle that could safely seat five passengers, he did not receive what he bargained for. *Id.* at 99:1-3.  As a result, he is unable to safely fit three passengers in the rear, including when car seats are used. *Id.* at 99:4-15.

## III.   <u>SUMMARY JUDGMENT STANDARD</u>

"Summary judgment is appropriate only where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 728-29 (9th Cir. 2013) (citation omitted).  "In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial."  *Seegert v. Rexall Sundown, Inc.*, No. 317CV01243BENJLB, 2020 WL 1674465, at *2 (S.D. Cal. Apr. 3, 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The court draws all reasonable factual inferences in favor of the non-movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and is "not permitted to weigh evidence."  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1121 (9th Cir. 2010).

## IV.   ARGUMENT

### A.   Mr. Garcia's Consumer Protection Claims Are Supported by Material Evidence

First, Defendant argues that Mr. Garcia cannot prove a misrepresentation because the CR-V "legally" and "factually" has a five-person seating capacity.  MSJ, at 11-15.  These arguments are meritless.

#### 1.   AHM's Compliance with FMVSS 571.10 and 49 C.F.R. 571.3 Does Not Preempt Mr. Garcia's Safety Allegations

AHM contends that the CR-Vs' five-passenger seating capacity representation is "true as a matter of law" because the rear seating positions comply with FMVSS 571.10 and 49 C.F.R. § 571.3.  MSJ, at 11-12.  In essence, AHM is asserting that compliance with FMVSS 571.10 and 49 C.F.R. § 571.3 preempts any state law allegation that the CR-V cannot fit three passengers in the rear.  As conceded by its own expert, however, compliance with FMVSS does not mean that a seat belt design is automatically safe.  Pl. Ex. UU, at 86:17-

24 (July 1, 2020 Deposition of William W. Van Arsdell).  Furthermore, this proposition fails to address the gravamen of Mr. Garcia's claims, *i.e.*, the CR-V cannot fit five passengers ***safely***.

Just as significantly, if not more so, AHM does not explain how application of California's consumer protection statutes to those allegations "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives" of FMVSS 571.510 or 49 C.F.R. § 571.3, which is necessary to establish that the federal regulations pre-empt state consumer protection laws. *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011).  For example, the Supreme Court held that "the 1984 version of FMVSS 208 [had preemptive effect with respect to vehicle airbags because it] embodie[d] the Secretary [of Transportation]'s policy judgment that safety would best be promoted if manufacturers installed alternative protection systems in their fleets rather than one particular system in every car."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000).  But the 1989 version of FMVSS 208 did not have the same preemptive effect with respect to seat belt designs because the Secretary of Transportation "did not determine that the availability of [seat belt design] options [in FMVSS 208] was necessary to promote safety."  *Williamson*, 562 U.S. at 336 (citation omitted).

Like in *Williamson*, AHM does not point to any authority indicating that compliance with FMVSS 571.10 and 49 C.F.R. § 571.3 precludes state law seat belt safety defect claims.  Indeed, 49 C.F.R. § 571.3 only provides definitions, while FMVSS 571.10 governs the "[n]umber of designated seating ***positions***," not seat belt designs. 49 C.F.R. § 571.10 (emphasis added); 49 C.F.R. § 571.3. In other words, FMVSS 571.10 requires automakers to designate the number of seating positions based on the width of the seating area, and is irrelevant to whether the seat belt system for those positions are safe or unsafe.  *See* 49

C.F.R. § 571.10.[4] Moreover, *Williamson* has clearly determined that allegations of defective seat belt designs are not subject to federal preemption. In sum, AHM does not, because it cannot, meet its "considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law'" to establish that the CR-V can safely seat five passengers "as a matter of law." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (citation omitted).

### 2. There Is Material Evidence That Mr. Garcia's CR-V Cannot Safely Seat Five Passengers

Next, Defendant contends that Mr. Garcia cannot prove that AHM's CR-V seating capacity representation is false or deceptive because the CR-V can, "factually," fit five passengers. MSJ, at 11, 12-15. Once again, AHM pointedly ignores the gravamen of Mr. Garcia's claim -- that although his CR-V can physically fit five passengers, it cannot do so ***safely***. Final Ruling, at 3, 5-6; TAC, ¶¶ 1-2, 27. As discussed above, Section II.B, *supra*, at 4-5, Plaintiffs have set forth material evidence that the CR-V cannot, in fact, fit five passengers safely, with or without a child safety seat, because of its rear seat belt configuration. None of AHM's evidence addresses Plaintiffs' allegations or rebuts the overwhelming evidence.

AHM first proffers evidence that three rear seat passengers are able to simultaneously buckle and unbuckle their seat belts in the rear seats, with or without car seats. MSJ, at 12-13, 14. But Mr. Garcia never claimed that three passengers are unable to simultaneously buckle their seat belts in the rear seats, with or without child safety seats. He testified that he was able to do so once or twice, but stopped because it was unsafe, as the seat belt design caused the

---

[4] Honda chose to build and advertise the CR-V as a five-seater for its own reasons and was not required by any federal regulations to do so. Pl. Ex. UU, at 50:3-9, 85:9-86:7, 95:12-19.

middle rear and left rear seat belts to overlap, twist, and/or catch—a condition

that the CR-V's manual describes as unsafe—when both were simultaneously

used. *See* Section II.B-C, *supra*, at 4-6. Mr. Garcia's assessment, as noted

above, is ███████████████████████████████████████████████,

consumer complaints received by AHM, the data derived from AHM's "human

factors" expert, and confirmed by Mr. Whitman's expert analysis. *See* Section

II.B, *supra*, at 5.

Defendant also proffers evidence that the three rear seat passengers

encountered no "difficulty buckling or unbuckling their seat belt," though it

notably fails to do the same with respect to scenarios where a car seat is used.

MSJ, at 13. This still sidesteps the crux of Plaintiffs' claims and evidence -- that

the middle rear and left rear seats' seat belt configuration is dangerous and, thus,

defective because they overlap, twist, and/or catch when both seat belts are used

simultaneously. Final Ruling, at 6. As Mr. Garcia observed, and Mr. Whitman

confirmed, the overlapping, twisting, and/or catching caused by the defective

seat belt configuration created delay and unnecessary risks to the middle rear

and left rear passengers in the event of an accident, which only worsened when

child safety seats were used. Section II.B-C, *supra*, at 4-6.[5] AHM's misleading

insistence that test subjects were able to perform the physical contortions

necessary to buckle and unbuckle their seat belts in static environments without

any pressure, stress, or external physical forces in play does not meaningfully

address the safety issues raised by the configuration.[6] In fact, AHM was forced

---

[5] AHM attacks the reliability and relevance of Mr. Whitman's expert analysis, which is only an acknowledgment of the material evidence that Plaintiffs have gathered in support of the safety claims. MSJ, at 14-15. As discussed more fully in Plaintiffs' concurrently-filed opposition to AHM's Motion to Exclude Whitman, Mr. Whitman's expert analysis fully meets the requisite evidentiary standards.

[6] AHM also attacks Mr. Garcia for not attempting to install a child safety seat in the middle rear position and fit a passenger in the left rear position at the same

to distort Mr. Whitman's testimony to fit its argument.  Contrary to AHM's assertion, when asked about combinations of passengers and car seats in the rear, Whitman testified, consistent with his opinion, about the obstructions and difficulty in buckling: "With some of the child seats, we managed to get the latchplate engaged with a little fumbling around the obstruction. In others, we had more difficulty. And, in some, it was an impossibility."  Pl. Ex. TT (May 13, 2020 Deposition of Gary Whitman), at 249:25-250:3; 250:20-251:1 ("[I]f you look at the video of him trying to insert the latchplate even when the buckle was not underneath the child seat, he still had difficulty and sometimes couldn't get the latchplate to it.  You can see the buckle, but there's not enough of an opening to get it into the buckle because you're blocked by the center rear belt[.]").

Plaintiffs have presented material evidence to support their claim that the CR-V cannot, in fact, fit five passengers safely, with or without child safety seats, because of its rear seat belt configuration.  As such, summary judgment cannot be granted on this ground.

### 3. AHM's Misrepresentations that the CR-V Could Safely Accommodate Five Passengers Gave Rise to Mr. Garcia's Claims

AHM asserts that Mr. Garcia's personal experience somehow precludes AHM's representations from being false or deceptive by inaccurately framing Mr. Garcia's "primary complaint" as the challenges he faced installing two car seats into his CR-V.  MSJ, at 15-16.  This is a red herring.  Mr. Garcia's claims are premised on his inability to safely accommodate a fifth passenger in the rear middle seat due to the rear seat belt configuration.  TAC, ¶¶ 48-52; Section II.C, *supra*, at 5-6.

---

time.  MSJ, at 15.  But the ability to do so also does not meaningfully address the safety issues with respect to buckling and unbuckling in the event of an emergency.

AHM also asserts, without any evidentiary or legal support, that it would have been unreasonable for Mr. Garcia to expect his CR-V to accommodate five passengers when using his two child safety seats or one booster seat because "[a] reasonable consumer would understand that any vehicle with seating capacity for five may not be able to accommodate all passengers and all car seat configurations."  MJS, at 16.  This is yet another red herring.

AHM's advertising and manuals clearly tout the CR-V as a five-seat vehicle, and there is no evidence that Defendant told customers that, in numerous circumstances, it could only accommodate four passengers. Incredibly, ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████  Pl. Ex. YY, (February 6, 2020 Deposition of Makoto Tsuruta), at 23:11-21, 69:6-24.  Of course, ███████████████████████████████████████████ ███████████████████████████  is directly contrary to AHM's promotion of the CR-V as a 5-seater and its warranty that the seat belts work in all conditions and is not obvious to consumers.  *See also* Pl. Ex. XX (February 6, 2020 Deposition of Ezra Yeung), at 46:9-48:15 ████████████████ ██████████████████████████████████████████████ █████████████████████████████████████████ ████  .  Therefore, the evidence establishes that the use of even one child safety seat would render the CR-V unsafe to accommodate five passengers, much less two.  Section II.B, *supra*, at 4-5.

**B.    AHM's Misrepresentations Caused Mr. Garcia Injury and Violated California's Consumer Protection Laws**

AHM argues that Mr. Garcia cannot establish causation because he test

drove the CR-V and had the opportunity to see and interact with the rear seat belt prior to purchase, and, thus, presumably should have known that, despite AHM's representations that the CR-V can fit five passengers, it cannot actually do so safely, with or without a child safety seat.  MSJ, at 16-17.  AHM cannot, however, point to any relevant evidence to support its argument.  Instead, AHM improperly transmutes the Garcias' testimony about their vehicle purchasing process[7] into an admission that Mr. Garcia "knew exactly what he was getting or did not care."  *Id.*  This stance is especially silly since it ignores AHM's own knowledge of the limitations of the rear seats and because assessment of the safety of a vehicle's seat belt configuration requires expert analysis, as indicated by the expert testimony proffered by both AHM and Plaintiffs on the issue. Pl. Exs. A, II, VV, WW.

The absurdity of this argument is compounded by AHM's inability to point to any relevant legal authority to support its position.[8]  Indeed, California

---

[7] In the portions of testimony that AHM cites, Mr. Garcia explains how he took a "test drive" and looked at different CR-V models and considered other Honda vehicles, while his wife explained that she was looking for an SUV that would fit her stroller.  MSJ, at 16-17 (*citing* Jan. 28, 2020 Deposition of Adrian Garcia (Pl. Ex. JJ), at 61:16-19, 57:15-58:1; March 10, 2020 Deposition of Johann Zapien (Pl. Ex. LL), at 16:3-5).

[8] AHM cites two authorities, *Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 840 (9th Cir. 2011), *vacated*, 699 F.3d 1103 (9th Cir. 2012) and *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746 (2003).  In *Degelman*, which the Ninth Circuit later vacated after the parties agreed to dismiss the appeal, the Ninth Circuit held that the district court "conceived of injury in fact too narrowly" when it reasoned that "class members would have bought other contact lens solution" even though the plaintiffs presented evidence that, "[h]ad the product been labeled accurately, they would not have been willing to pay as much for it as they did, or would have refused to purchase the product altogether."  659 F.3d at 840.  In *Wilens*, the California Court of Appeal affirmed the trial court's finding that individual damage issues would predominate because the unconscionability of the account-holders' termination provision may not necessary have caused any damages just by the "mere insertion" of that provision, and the plaintiff did not establish that the provision

consumer protection statutes were enacted primarily to address these types of

*caveat emptor* arguments:

> There is no duty resting upon a citizen to suspect the honesty of
> those with whom he [or she] transacts business. Laws are made to
> protect the trusting as well as the suspicious. [T]he rule of caveat
> emptor should not be relied upon to reward fraud and deception.

*Thompson v. 10,000 RV Sales, Inc.*, 130 Cal. App. 4th 950, 976 (2005); *see*

*Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree

with the district court that reasonable consumers should be expected to look

beyond misleading representations on the front of the box to discover the truth

from the ingredient list in small print on the side of the box"); *see also In re*

*Tobacco II Cases*, 46 Cal. 4th 298, 328, 207 P.3d 20, 40 (2009) ("an allegation

of reliance is not defeated merely because there was alternative information

available to the consumer-plaintiff").  In other words, just as the "Ninth Circuit

has found a disclaimer on the side of a box insufficient to cure misleading

statements on the front of a box" and  "a disclaimer 'buried deep' in Cisco's

website is insufficient to set a reasonable consumer straight," the opportunity for

the average consumer -- who is most likely not a seat belt expert -- to take a test

ride cannot absolve AHM for misrepresenting the safe seating capacity of Mr.

Garcia's CR-V.  *Cisco Sys. Inc. v. Link US, LLC*, No. 18-CV-07576-CRB, 2019

WL 6682838, at *9 (N.D. Cal. Dec. 6, 2019).

Meanwhile, to establish standing under the UCL, the CLRA, and the

FAL, the named plaintiff need only demonstrate actual reliance.  Final Ruling, at

9 (citing *Potter v. Chevron Prods. Co.*, No. 17-CV-06689-PJH, 2018 WL

4053448, at *11 (N.D. Cal. Aug. 24, 2018)).  Mr. Garcia has provided material

---

was material to the account holders.  120 Cal.App.4th at 755.  Here, as discussed
in Plaintiffs' Motion for Class Certification briefing, Plaintiffs have presented
evidence that AHM's misrepresentations were material and that damages can be
determined on a classwide basis.  Motion for Class Certification, at 10, 18-19;
Reply in support of Motion for Class Certification, at 13-22.

evidence of such reliance -- he testified that he was deceived into paying for, but not receiving, a vehicle that could safely seat five passengers.  Pl. Ex. JJ, at 98:22-99:7; *see Degelmann*, 659 F.3d at 840.  Simply put, Mr. Garcia did not receive the benefit of his bargain with AHM.

This material evidence establishes an injury under California's consumer protection laws because Mr. Garcia did not receive what he paid for.  *See Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 822 (9th Cir. 2019) ("The primary right alleged to have been violated in *Anthony*, as in the case before us, was the right to take a product free from defect.  The defect did not cause the plaintiffs' injury; the defect was the injury[.]") (quotation omitted); *see also In re Arris Cable Modem Consumer Litig,* 327 F.R.D. 334, 352 (N.D. Cal. 2018)) (allegations of economic injury supported by allegations that defendant represented that the product had features that it did not have).  As such, AHM's argument that "Garcia bargained for [and received] a vehicle with seating capacity for five" (MSJ, at 17) is unsupported and meritless.[9]

---

[9] AHM cites *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) and *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.* ("*In re Toyota*"), 959 F. Supp. 2d 1244 (C.D. Cal. 2013) in support of its argument that Mr. Garcia was not injured. Both authorities are inapplicable, here.  In *Birdsong*, the plaintiffs' alleged economic harm from the iPod's purported defect of risking hearing loss failed because, not only did Apple make no "representations that iPod users could safely listen to music at high volumes for extended periods of time," but actually "provided a warning against listening to music at loud volumes." 590 F.3d at 961.  In *In re Toyota*, the lead plaintiff failed to present, on summary judgment, evidence of "a specific design defect common" to all of the class vehicles or the existence of the defect at issue to his particular vehicle. 959 F. Supp. 2d at 1254.  Here, in contrast, Plaintiffs have presented evidence that the rear seat belt configuration is defective such that, contrary to AHM's representations and without any warning, the CR-V cannot safely accommodate five passengers, with or without car seats.  *See* Section II.B, *supra*, at 4-5.

### C.    Mr. Garcia Has Presented Evidence of Damages

AHM argues that Mr. Garcia is unable to present a non-speculative measure of his damages.  MSJ, at 17-18.  AHM concedes, however, that Plaintiffs have presented two models with which to measure each class member's, and, thus, Mr. Garcia's, damages: (1) the Average Overcharge model, based on the price premium class members paid for a vehicle that can safely accommodate five passengers, and (2) the Median Cost of Repair model, based on the median cost of repair (parts plus labor) to address the seat belt configuration defect so that the CR-V can safely accommodate five passengers. Pl. Ex. BB, Dkt. No. 81-29, at ¶¶ 15-16; Motion for Class Certification, at 11-12, 22-23; *see Nguyen*, 932 F.3d at 816; *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654, 657 (9th Cir. 2017).[10]  To the extent Defendant claims that these damages models are inadmissible, it makes no arguments other than referring to its opposition to Plaintiffs' Motion for Class Certification.  Plaintiff's response to those arguments is set forth in their concurrently-filed Reply in support of their Motion for Class certification, and is incorporated herein by reference.

AHM also notes that "Garcia concedes he is not entitled to an average overcharge damage amount," citing the portion of Plaintiffs' motion for class certification requesting, in the alternative, that the Court certify the California classes under Rule 23(b)(2) for injunctive relief.  MSJ, at 18 (citing ECF No. 81, at 24).  But there is no such "concession": both the Average Overcharge model and the Median Cost of Repair model qualify as the restitutionary relief that Garcia requested in the alternative.  Motion for Class Certification, at 22-23; *Nguyen*, 932 F.3d at 816; *Briseno*, 674 F. App'x at 657.

---

[10] By contrast, in *Magnetar Techs. Corp. v. Intamin, Ltd.*, which AHM cites, the Ninth Circuit found that the plaintiff failed to submit "expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate" its lost profits.  801 F.3d 1150, 1159 (9th Cir. 2015).

**D.     Mr. Garcia's Omission-Based Claims Are Also Supported By Material Evidence**

AHM argues that Mr. Garcia's omission-based CLRA and UCL claims should be dismissed because no circumstances arose to trigger a duty to disclose, and that the "CRV cannot fit five passengers under all circumstances is a known, open, and obvious fact that does not require disclosure."  MSJ, at 18-19.  Although this is a telling admission by Defendant, it once again misframes Mr. Garcia's claims.  As repeatedly noted and as this Court recognized, Mr. Garcia alleged that AHM "deceptively markets and advertises the CR-V as having a seating capacity for five people with three-point seat belts at all seating positions, when, in fact, if there are three adult passengers or even a single car seat, the passengers cannot simultaneously buckle their seat belts safely."  Final Ruling, at 2, 5-6.  Furthermore, AHM consistently discussed the use of child safety seats in its written materials without "disclaiming or narrowing" their impact on the CR-V's safe seating capacity—*e.g.*, caution that although there are five seating areas and five individuals can, as a factual matter, fit into the vehicle, they cannot do so safely, with or without a child safety seat.  Final Ruling, at 6.[11]

These facts and evidence trigger the duty to disclose under any of the three circumstances discussed in *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018).  The omissions at issue: (1) concern an unreasonable safety hazard; (2) are material in light of AHM's affirmative representations; and (3) go to the central function of the product as a 5-passenger vehicle.  *Id.* at 861-4.

To the extent the test set forth in *LiMandri v. Judkins*, 52 Cal. App.4th 326 (1997) applies,[12] Mr. Garcia satisfies at least three of the four circumstances

[11] Plaintiffs have presented evidence of such representations and omissions, which AHM do not dispute.  *See* Section II.A, *supra*, at 3-4.

[12] As AHM concedes, the *LiMandri* test only applies to the two circumstances besides the presence of an unreasonable safety defect, *i.e.*, the material fact from a "partial disclosure" and the "central function" circumstances.  *See Hodsdon*, 891

set forth in that test.  *See Hodsdon*, 891 F.3d at 862 (noting that the *LiMandri* test is met when, *inter alia*, "(2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; . . . [or] (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed") (quoting *Collins*, 202 Cal. App. 4th at 255).  Plaintiffs have set forth material evidence that: (1) AHM had exclusive knowledge of the seat belt defect not known or reasonably accessible to Mr. Garcia and other consumers (Motion for Class Certification, at 6-10); (2) AHM concealed that defect (*id.*); and (3) AHM represented "the CR-V as having a seating capacity for five people with three-point seat belts at all seating positions, when, in fact, if there are three adult passengers or even a single car seat, the passengers cannot simultaneously buckle their seat belts safely."  Final Ruling, at 2; *see Rutledge*, 238 Cal. App. 4th at 1179 (call center data, service data, and internal meeting to address issues created "a triable issue of fact as to whether HP knew about the defect . . . and concealed this fact from the consumers").

AHM does not contend, much less present evidence, that knowledge that the CR-V can ***never*** safely seat five adult passengers or five passengers when at least one child safety seat is used -- the actual deception that Plaintiffs allege -- was reasonably accessible to Mr. Garcia at the time of purchase.  Further, the purported omissions at issue in the authorities that AHM cites were expressly disclosed by Defendant and/or publicly available.[13]  As noted above, there is no

_____

F.3d at 863 (discussing *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011) and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015)).

[13] *See Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, 852 F. Supp. 2d 1280, 1314 (E.D. Cal. 2012) ("secret" terms in another contract already disclosed in plaintiff's asset purchase agreement); *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1240 (C.D. Cal. 2008) (television manual, which was available on the internet, disclosed signal limitations); *Clayton v. Landsing*

1  legal duty for consumers to verify a manufacturer's representations or the

2  statements in its manuals under California law.  *See* Section IV.B, *supra*, at 12-

3  15; *Thompson*, 130 Cal. App. 4th at 976; *Williams*, 552 F.3d at 939.  Nor is it

4  reasonable to expect that Mr. Garcia or other consumers have the expertise to

5  accurately determine that a seat belt configuration is safe.  Thus, it would be

6  unreasonable to expect Mr. Garcia to confirm the CR-V's actual capability to

7  seat five passengers safely at the time he purchased the vehicle, especially since

8  Mr. Garcia, like probably most consumers, did not bring four other passengers

9  along with him while shopping for vehicles to test that capability.[14]

10       **E.    Mr. Garcia's UCL and FAL Claims Are Proper**

11       AHM next argues that Mr. Garcia's UCL and FAL claims must be

12  dismissed because he has an adequate remedy at law through his CLRA and

13  express warranty claims.  MSJ, at 19-21.  Despite filing a motion for summary

14  judgment, AHM cites the "few federal courts [that] seem to have decided . . .

15  claims for equitable relief should be dismissed at the pleading stage if the

16  plaintiff manages to state a claim for relief that carries a remedy at law."  *Adkins*

17  *v. Comcast Corp.*, No. 16-CV-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal.

18  Aug. 1, 2017) (referring to cases AHM cites).[15]  But there is "no basis in

19  _____

20  *Pac. Fund, Inc.*, No. C 01-03110 WHA, 2002 WL 1058247, at *1 (N.D. Cal.
    May 9, 2002) (value of share price publicly available).

21  [14] Mr. Garcia shopped for vehicles with his then-pregnant wife and young
    daughter.  Pl. Ex. JJ, at 56:21-57:22, 62:8-18.

22  [15] *See In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *1

23  (N.D. Cal. Mar. 12, 2014) (motion to dismiss); *Philips v. Ford Motor Co.*, No.
    14-CV-02989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) (same); *Durkee*

24  *v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184, at *1 (N.D. Cal.
    Sept. 2, 2014) (same); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-

25  LHK, 2016 WL 4698942, at *1 (N.D. Cal. Sept. 8, 2016) (same); *Rhynes v.*

26  *Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *1 (N.D. Cal. May 31,
    2011) (same); *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195 (N.D. Cal. 2017)

27  (same); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191 (N.D. Cal. 2016) (same);

28  *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2016

California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage" or the summary judgment stage.  *Id.*[16]; *accord Wildin v. FCA US LLC*, No. 3:17CV-02594-GPC-MDD, 2018 WL 3032986, at *7 (S.D. Cal. June 19, 2018) (courts have "declined to follow this practice . .  primarily on the ground that no controlling authority prohibits a federal court plaintiff from pleading alternative remedies") (citing cases).[17]  This Court agreed.  *See Muriu v. W. Coast Life Ins. Co.*, No. CV 17-380-GW(SKX), 2017 WL 10592124, at *6 (C.D. Cal. May 25, 2017) (rejecting argument that "Plaintiff has an adequate remedy at law" for her

---

WL 7486600 (C.D. Cal. Sept. 27, 2016) (same); *Bentley v. United of Omaha Life Ins. Co.*, No. CV157870DMGAJWX, 2016 WL 7443189 (C.D. Cal. June 22, 2016); *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-CV-04809-HSG, 2015 WL 4941780, at *1 (N.D. Cal. Aug. 19, 2015). Three of those authorities are from the same judge. *See Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) (Koh, J.); *Zapata Fonseca*, 2016 WL 4698942 (same); *Philips*, 2015 WL 4111448 (same).

[16] AHM also cites three Ninth Circuit and one California appellate decisions, but none support its position.  In *Whittlestone, Inc. v. Handi-Craft Co.*, the Ninth Circuit addressed the defendant's attempt to strike request for lost profits and consequential damages, which were precluded by law—not relief under the UCL and FAL.  618 F.3d 970, 974-75 (9th Cir. 2010).  Similarly, in *Schroeder v. United States*, the Ninth Circuit discussed the interplay between the Emergency Low Income Housing Protection Act and a quiet title remedy under federal common law.  569 F.3d 956, 963-64 (9th Cir. 2009).  In *In re Sony PS3 Other OS Litig.* affirmed the district court's decision to sustain the CLRA, FAL, and UCL claims on a motion to dismiss, and was referring to the fact that, under California law, "'Unjust Enrichment' does not describe a theory of recovery, but an effect," *i.e.*, "restitution."  551 F. App'x 916, 923 (9th Cir. 2014).  Finally, the California appellate court in *In re Vioxx Class Cases* was simply discussing the equitable nature of an "UCL action" on a motion for class certification.  180 Cal. App. 4th 116, 129 (2009).

[17] *See, e.g., Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *6 (May 17, 2018); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018); *Cabrales v. Castle & Mortg. LLC*, No. 1:14-cv-01138-MCE, JLT, 2015 WL 3731552, at *4 (E.D. Cal. June 12, 2015).

UCL claim because "Plaintiff is allowed to plead alternative theories, even inconsistent ones") (citing Fed. R. Civ. P. 8 and Cal. Bus. & Prof. Code § 17205) (Wu, J.).

"As those courts indicate, the time to sort out alternatively pled remedial requests is *at the end of a case, not the very beginning*." *Wildin*, 2018 WL 3032986, at *7 (emphasis added). A motion for summary judgment, like a motion to dismiss, is, of course, not the end of the case if it is even partially denied. Despite surviving summary judgment, the factfinder may still ultimately find in favor of AHM on certain factual matters such that Mr. Garcia cannot establish his legal claims. *Id.* Thus, dismissing Mr. Garcia's equitable claims at this juncture would completely subvert the purpose of the UCL and FAL—*i.e.*, providing equitable relief if the factfinder finds that he is not entitled to any remedy at law.

Conversely, AHM here would not be unduly prejudiced if Mr. Garcia's equitable and legal claims proceed to trial simultaneously. If the UCL and FAL claims are "truly identical to the . . . other claims as [AHM] asserts, retention" of those claims would cause "only incidental [trial] burdens on Defendant beyond what would be necessary to litigate those claims that provide legal remedies." *Id.* at *7. And if Mr. Garcia prevails on all claims, this Court will "take all necessary steps to ensure that [he] is not permitted double recovery for what are essentially two different claims for the same injury." *People of the State of Cal. v. Chevron Corp.*, 872 F.2d 1410, 1414 (9th Cir. 1989).

Finally, the relief that Mr. Garcia requests under the UCL and FAL *is not* identical to his legal remedies. As this Court found in *Muriu*, Mr. Garcia also asks the Court to enjoin AHM's false and misleading representations to the public under the UCL and FAL. TAC, ¶¶ 111, 120; *see Muriu*, 2017 WL 10592124, at *6 ("To the extent Plaintiff implies that Defendant's conduct harms the public (which, in turns, entails a continuing harm to her), Plaintiff's

claims for money damages to compensate for her injury prima facie do not adequately remedy those harms to the public at large, and therefore injunctive relief under the UCL is warranted[.]").

### F.  Summary Judgment Is Not Warranted On Mr. Garcia's Requests For Injunctive Relief

AHM argues that Mr. Garcia has no standing to pursue his request for injunctive relief because he can "visit any Honda dealership prior to purchase to 'physically inspect, sit [in], and test drive the vehicle." MSJ, at 21-22. This is another iteration of AHM's *caveat emptor* defense which, as discussed above, runs counter to California consumer protection laws precluding any duty on a reasonable consumer to verify a manufacturer's representations. *See* Section IV.B, *supra*, at 12-15; *Thompson*, 130 Cal. App. 4th at 976; *Williams*, 552 F.3d at 939.

Moreover, Defendant's arguments directly contradict the Ninth Circuit's analysis in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). There, the Ninth Circuit held that the plaintiff "face[d] a threat of imminent or actual harm by not being able to rely on Kimberly–Clark's labels in the future" on whether its wipes were truly "flushable" as advertised, and that "this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 967. Under AHM's proposition, however, the plaintiff in *Davidson* would have no standing because she could simply request samples of Kimberly-Clark's products to test the truth of the company's representations, which directly contradicts the holding in *Davidson*.

### G.  Mr. Garcia's Seat Belt Warranty Claim Is Supported By Material Evidence

Finally, AHM argues that summary judgment should be granted on Mr. Garcia's seat belt warranty claim because there is no material evidence that the CR-V's rear seat belt configuration is defective, and that even if there were, "the

seat belt design is not a seat belt 'component' subject to the seat belt warranty." MSJ, at 22.  Neither points have any merit.

First, as discussed above, Section II.B, *supra*, at 4-5, Plaintiffs have presented material evidence that the CR-V is defective and cannot, in fact, fit five passengers safely, with or without a child safety seat, because of its rear seat belt configuration.  Second, AHM's attempt to distinguish between a "seat belt component" and the seat belt configuration is a distinction without a difference. All of the components related to the design defect preventing passengers from buckling into the backseat safely -- *e.g.*, the center rear anchor/left rear buckle assembly Mr. Whitman identifies (Pl. Ex. A, ¶ 17) -- fails to function properly during normal use and will need to be replaced under the seat belt warranty.

## V.    **CONCLUSION**

For the foregoing reasons, Mr. Garcia respectfully requests that this Court deny AHM's Motion for Summary Judgment.

Dated:    August 3, 2020                      Respectfully submitted,


                                              By:  */s/ Kolin C. Tang*
                                              Kolin C. Tang
                                              SHEPHERD, FINKELMAN, MILLER
                                              & SHAH, LLP
                                              1401 Dove Street, Suite 540
                                              Newport Beach, CA 92660
                                              Telephone: (323) 510-4060
                                              Facsimile: (866) 300-7367
                                              Email:  ktang@sfmslaw.com

                                              James C. Shah
                                              SHEPHERD, FINKELMAN, MILLER
                                              & SHAH, LLP
                                              1845 Walnut Street, Suite 806
                                              Philadelphia,  PA 19103
                                              Telephone: (610) 891-9880
                                              Facsimile: (866) 300-7367
                                              Email:  jshah@sfmslaw.com

                                              Robert W. Murphy
                                              MURPHY LAW FIRM
                                              1212 SE 2nd Ave.
                                              Ft. Lauderdale, FL 33316

Telephone (954) 763-8660
Facsimile: (854) 763-8607
Email:  rwmurphy@lawfirmmurphy.com

Ryan R. Frasher
THE FRASHER LAW FIRM, P.C.
3209 W. Smith Valley Road, Ste. 253
Greenwood, IN 46142
Telephone (317) 300-8844
Facsimile: (317) 218-4501
Email:  rfrasher@frasherlaw.com

*Attorneys for Plaintiffs and the
Proposed Class*