**SHEPHERD, FINKELMAN, MILLER**
**& SHAH, LLP**
Kolin Tang (SBN 279834)
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs and the Proposed Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILL SCHEPLER and ADRIAN GARCIA, On Behalf of Themselves and All Others Similarly Situated, | CIVIL ACTION NO. 2:18-cv-6043-GW-AFM |
| Plaintiffs, | **FOURTH AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| AMERICAN HONDA MOTOR CO., INC., | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiffs, Bill Schepler ("Schepler") and Adrian Garcia ("Garcia") (collectively, "Plaintiffs"), by and through their attorneys, file this action on behalf of themselves and all others similarly situated against Defendant, American Honda Motor Co., Inc. ("Defendant" or "Honda" or "AHM"), and allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action individually and on behalf of a proposed Illinois class and a proposed California class (more fully defined below) for the

benefit and protection of purchasers and lessees of Defendant's model years 2017 and 2018 Honda CR-Vs ("CR-V(s)" or "Vehicles").  As alleged herein, Defendant deceptively markets and advertises the CR-V as having a seating capacity of five and having, as one of its passive safety features, three-point seat belts at all seating positions when, in fact, it can never, from a reasonable consumer's perspective, safely seat five passengers, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely. AHM failed to disclose these facts to Plaintiffs and Class members (more fully defined below) and the acts are in direct contradiction to Defendant's presentation of the Vehicles with three belts as well as its marketing, advertisements, and seat belt warranty.

2.     AHM's conduct is actionable, as set forth below, in the following ways: (1) AHM made partial misrepresentations in its web pages and press releases and on the presentation of the CR-Vs about the rear seating capacity of the Vehicles that were and are misleading because AHM omitted critical information about the safety limitations that occur when three people are seated in the rear seat; and (2) AHM failed to disclose critical and material information that it had exclusive knowledge of because of the safety defect in the rear seat belt configuration.

3.     Compounding AHM's failure to disclose the fact that three people cannot sit in the rear seats safely, are the misstatements in AHM's owner's manuals, which further emphasize the three-seating capacity in the rear, although AHM knew that there was no safe way to sit three people in the rear seats. Further, AHM fails to inform its customers of any limits regarding the rear seating capacity, nor did it inform Plaintiffs and Class members that the utilization of a car seat can compromise the ability to maintain the buckled status of the belts.  This presents a safety issue as it prevents customers from

safely seating five people in a CR-V at any given time.

4.      At all relevant times, Defendant has knowingly, misleadingly and deceptively failed to disclose what its designers and engineers knew: that the three backseat seat belts can never, from a reasonable consumer's perspective, safely be used simultaneously when three passengers are in the backseat (with or without one or more car seats installed).  Defendant had a duty but failed to disclose that the CR-V can, at most, only simultaneously seat four passengers safely.

5.      Plaintiffs bring this action on behalf of themselves and all other similarly-situated consumers to address Defendant's omissions and false and misleading advertising relating to the sale and lease of the CR-Vs and to obtain redress for those who have purchased CR-Vs throughout the United States. Schepler alleges violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1, *et seq.* ("ICFDBPA"), and breach of the Seat Belt Limited Warranty under Illinois law on behalf of the proposed Illinois class.  Garcia alleges violations of the California Consumers Legal Remedies Act, Civil Code § 1750, *et seq*. ("CLRA"); the Unfair Competition Law, California Business and Professions Code § 17200, *et seq*. ("UCL"); and the False Advertising Law, California Business and Professions Code § 17500, *et seq*. ("FAL"); as well as  breach of Seat Belt Limited Warranty under California law on behalf of the proposed California class.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, exclusive of interest and costs, the proposed classes have at least 100 members, and this is a class action in which certain of the class members (including Plaintiff) and Defendant are citizens of different states.

7.      Venue is proper in this judicial District under 28 U.S.C. § 1391

because Defendant is a resident of this judicial District and does business throughout this District and a substantial part of the acts and omissions giving rise to Plaintiff's claims herein occurred in or emanated from this District.

8. At all pertinent times, Defendant was engaged in the marketing, advertisement, and sale of CR-Vs, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

9. Schepler is, and, at all times relevant to this action has been, a resident of Sycamore, Illinois, and, thus, is a citizen of Illinois.

10. Garcia is, and, at all times relevant to this action has been, a resident of Dinuba, California, and, thus, is a citizen of California.

11. Defendant is a North American subsidiary of Honda Motor Company, Ltd., and was founded in 1959. Defendant is headquartered in Torrance, California, and, thus, is a citizen of California. Defendant markets and sells the CR-Vs throughout the United States, including in this District.

## SUBSTANTIVE ALLEGATIONS

12. This is an action brought against Defendant on behalf of Plaintiffs and all persons who purchased or leased a CR-V in Illinois or California.

13. The CR-V is a crossover SUV and is Defendant's mid-range utility vehicle, originally introduced into the North American market in 1997.

14. Defendant markets and advertises the CR-V as having a seating capacity of five with three-point seat belts at all seating positions, although that is not true and AHM omits that the Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers simultaneously, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.[1]

---

[1] Model information, http://owners.honda.com/vehicles/information/2018/CR-V/specs#mid^.

15.     Immediately prior to the sale of the 2017 Vehicles in the United State, on November 30, 2016, Defendant issued a press release regarding the specifications and features of the model year 2017 CR-V, which listed a seating capacity of five.[2]

16.     The model year 2017 CR-V was substantially redesigned and re-engineered from the previous model, but the model year 2018 CR-V was essentially unchanged from the 2017 model.[3]  The backseat seat belt buckle configuration was among the features that remained the same between the 2017 and 2018 models.

17.     Defendant published a brochure, directed to Plaintiffs and Class members, advertising the features and benefits of the 2018 CR-V, which included a description of the vehicle as having "[e]xcellence in every detail," including "spacious seating for five."[4]

18.     One feature of a vehicle that all consumers are aware of prior to purchasing or leasing a vehicle is its seating capacity.

19.     Plaintiffs and Class members reasonably expected that all five seat positions AHM presented as available for use in the Vehicles are accessible and safe, regardless of location.

20.     When a Vehicle is presented with five seat belts, three in the rear seat, and is presented in brochures, specifications and internet advertising as having seating for five, without any equivocation, Plaintiffs and reasonable

---

RW1H5JJW (listing the specifications for the 2018 Honda CR-V, including passive safety features) (last visited December 3, 2020).

[2] Honda, 2017 Honda CR-V Press Kit Specifications & Features, http://hondanews.com/releases/2017-honda-cr-v-press-kit-specifications-features?page_size=60&page=5 (last visited December 3, 2020).

[3] *See* Car and Driver, 2018 Honda CR-V, https://www.caranddriver.com/reviews/2018-honda-cr-v-in-depth-model-review (last visited July 10, 2018).

[4] 2018 CR-V Brochure at 4 (available for download at https://automobiles.honda.com/cr-v?from=crv.honda.com#) (last visited July 10, 2018).

consumers did believe and would reasonably believe that the Vehicle could seat five people safely.  In the CR-V, however, this was not possible due to the defective design of the rear seat belts.

21.   Moreover, because of the defective design, including the overlap of the seat belts and the buckles, it takes more time to buckle and unbuckle the rear seat belts in the CR-Vs.

22.   This critical and material information was purposely withheld from Plaintiffs and Class members by AHM and, had they been aware of the omitted information, they would not have purchased or leased the Vehicles.

23.   In addition to the brochures and the presentation of the Vehicles themselves, the specifications of the Vehicles promise and warrant they have a capacity of five, with two passengers in front and three passengers in back, with seat belts that safely protect each passenger.

24.   The AHM specifications which are advertised and accompany the Vehicles also omit the critical and material information that, although the Vehicles are represented to be five-seaters, they can never, from a reasonable consumer's perspective, safely seat five passengers, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.

25.   The 2017 CR-V Owner's Guide and 2018 Owner's Manual (collectively, the "Manual(s)") perpetuate and exacerbate AHM's fraudulent omissions because each contain entire sections dedicated to the seat belt features of the CR-V.[5]  Both Manuals *specifically* state that "[a]ll five seating positions are equipped with lap/shoulder seat belts with emergency locking retractors."[6]

---

[5] *See* CR-V 2017 Owner's Guide, http://techinfo.honda.com/rjanisis/pubs/QS/AH/ATLA1717OG/enu/ATLA1717OG.PDF at 5-8 (last accessed October 11, 2018 [hereinafter "2017 Guide"]; CR-V 2018 Owner's Manual, http://techinfo.honda.com/rjanisis/pubs/QS/AH/ATLA1818OG/enu/ATLA1818OG.PDF at 40-48 (last accessed July 10, 2018 [hereinafter, "2018 Manual"].

[6] 2017 Guide at 8; 2018 Manual at 40.

The Manuals also provide instructions on how to fasten a seat belt by "[i]nsert[ing] the latch plate into the buckle" and warn to "[m]ake sure that the belt is not twisted or caught on anything."[7]

26.     Honda recognizes the necessity of the proper use of seat belts in its Vehicles and provides the following "warnings" in its Manual:  1) "Not wearing a seat belt properly increases the chance of a serious injury or death in a crash, even though your vehicle has airbags.  Be sure you and your passengers always wear seat belts and always wear them properly;" and 2) "Make sure all seatbelts are properly positioned before driving."[8]

27.     Honda also recognizes that the CR-V will be operated with children in car seats in the rear of the Vehicles, as it states that a car seat  is the "safest place for a child," and, in fact, provides, *inter alia*, the following warnings in its Manual: 1) "Children who are unrestrained or improperly restrained can be seriously injured or killed in a crash;" and 2) "Always place a rear-facing child seat in the rear seat, not the front."[9]

28.     The CR-V provides two methods of installing a child seat, using a LATCH-Compatible seat or using the lap/shoulder belt. The 2017 Manual provides that LATCH -Compatible seats can be installed at *any* of the rear seat positions.[10] However, according to the 2018 Manual, the CR-V will only allow a LATCH-Compatible seat to be installed in either of the two outer rear seats (but not the middle rear seat), while a child seat using the lap/shoulder belt can be installed in any rear seat.[11]

---

[7] 2017 Guide at 10; 2018 Manual at 7.

[8] 2017 Guide at 8-10; 2018 Manual at 5-7.

[9] 2017 Guide at 18-21; 2018 Manual at 15-17.

[10] 2017 Guide at 21.

[11] 2018 Manual at 18-19.

29.     From the early days of child restraint regulations, the center rear seat position has been considered the safest place in the car, since it is farthest from the exterior of the vehicle and therefore furthest from impact and intrusion from any direction.  If there are two other passengers in the Vehicle's back seat however, that safe placement of a child seat is not available in the Honda CR-V. AHM failed to provide this information to Plaintiffs and Class members.

30.     Access to the buckles to release in the event of a Vehicle fire, water immersion, or Vehicle crash would be extremely difficult for the occupant and likely impossible for others trying to release the occupant under these, or other, emergency conditions when time is of the essence. Unbuckling of the seat belt on the CR-V takes more time than in a vehicle where the seat belts do not cross and overlap.  AHM failed to provide this information to Plaintiffs and Class members.



31.     Plaintiffs were deceived and reasonable consumers could be and have been deceived as to the Vehicles' actual seating capacity, as they can never, from a reasonable consumer's perspective, safely seat five passengers, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle

their seat belts safely.  This was and is a material fact for Plaintiffs and their respective proposed classes.

32.     Honda made false representations and omissions about the fact that the Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers at the same time.  Honda had a duty but failed to disclose that the CR-V can, at most, only simultaneously seat four passengers safely.

33.     The CR-Vs are covered by a three-year, 36,000-mile warranty, under which Defendant will repair or replace any part that is defective in material or workmanship under normal use.[12]

34.     The CR-Vs are also covered by a Seat Belt Limited Warranty that continues for 15 years or 150,000 miles and states that: "While seat belts cannot completely remove the possibility of injury, they do provide a very significant level of protection when used properly.  Honda believes the best way to enhance your safety is to use your seat belt.  To encourage their use, the seat belts should always be in good operating condition."[13]

35.     However, despite stating that it encourages seat belt use and warranting that it will "repair or replace" (including the parts and labor charges) any Honda seat belt component that "fails to function properly during normal use," Honda sells its CR-V knowing that three passengers can never, from a reasonable consumer's perspective, be safely buckled in the rear of the Vehicles, with our without the use of one or more car seats.  Thus, the seat belts cannot, and do not, function properly during foreseeable and normal use.

---

[12] Warranty Booklet for 2017 CR-V at 9, http://owners.honda.com/Documentum/Warranty/Handbooks/AWL_02971_2017_Honda_Warranty_Basebook__KA__FINAL.pdf [2017 Warranty Booklet] (last visited July 10, 2018); Warranty Booklet for 2018 CR-V at 9, http://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty_AWL05251_FINAL.pdf (last visited July 10, 2018) (collectively hereinafter, "Warranty Booklets").

[13] 2017 Warranty Book at 28.

36.     Specifically, Honda omits to state the material fact that it is impossible for the anchor buckle and rear driver's-side passenger's buckle to be utilized at the same time, without both seat belts overlapping, twisting, and/or catching.  Despite requests by Plaintiffs and members of the proposed classes, Defendant refuses repair or replace the seatbelts.  Defendant's action, in failing to repair a known seatbelt defect, which defect it knows actually *discourages* seatbelt use, and is therefore a safety hazard, constitutes a breach of the Seat Belt Limited Warranty.

37.     The CR-V rear seat belts are installed such that the rear driver's-side seat belt and rear passenger's-side seat belt are retractable to the side of the Vehicle nearest the passenger's shoulder.  The seat belt for the rear middle seat, however, is a seat belt with a detachable anchor, which retracts into the ceiling of the Vehicle.[14]  There is an "anchor buckle" to the middle passenger's left wherein a small latch plate may be buckled.  The passenger may then proceed to fasten the seat belt normally, inserting the large latch plate into the buckle to the passenger's right.  The following images and instructions from the 2017 Guide illustrate:[15]

---

[14] *See* 2017 Guide at 11; 2018 Manual at 46.

[15] 2017 Guide at 11.

**■ Seat Belt with Detachable Anchor**
The seat belt for the rear center seat is located in the ceiling.

1. Pull out the seat belt's small latch plate and the latch plate from each holding slot in the ceiling.

2. Line up the triangle marks on the small latch plate and anchor buckle. Make sure the seat belt is not twisted. Attach the belt to the anchor buckle.

3. Insert the latch plate into the buckle. Properly fasten the seat belt the same way you fasten the lap/shoulder seat belt.

   To unlatch the detachable anchor, insert the latch plate into the slot on the side of the anchor buckle.

⚠WARNING
Using the seat belt with the detachable anchor unlatched increases the chance of serious injury or death in a crash.
Before using the seat belt, make sure the detachable anchor is correctly latched.

38.    However, the configuration of the buckles is such that the middle passenger's anchor buckle is to the left of the rear driver's-side passenger's buckle, rendering it impossible for the anchor buckle and rear driver's-side passenger's buckle to be utilized at the same time, without both of the seat belts overlapping, twisting, and/or catching.  As seen in the picture of Plaintiff's CR-V's backseat below, the rear driver's-side passenger's buckle is located closest to the middle seat passenger, while the middle seat passenger's anchor buckle is located closest to the rear driver's-side passenger:



39.     Therefore, the middle seat passenger is unable to secure the small latch plate in the anchor buckle without causing the seat belt to get caught on, overlap with, or become twisted with the seat belt of the rear driver's-side passenger, which contradicts Honda's own safety warnings in its Manuals and is, independently, a safety issue.

40.    The CR-V's narrow anchorage points for seat belts limit the ability to properly and safely use them to install various types of child seats or child restraints without obstructing access to the left outboard buckle.  For example, when a car seat is installed using lower anchorages in the center rear occupant position (which was allowed per the AHM's Manual), there is no safe access to the Vehicle's adjacent seat belt buckles.

41.    A child seat in the center position either partially or completely blocks access to the left outboard buckle.  This prevents the left rear seat belt from being worn in some cases or makes it difficult to buckle, as illustrated by the following:



42.    Due to the position of the left rear seat belt's buckle, some of the rear bottom corners of child seats installed in the center rear could compress the left rear buckle's push button and cause the buckle to release the latch plate, as illustrated by the following:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







43.     When the J1819 fixture is buckled in the rear center seat, there is no room to access the seat belts, as illustrated by the following:



44.   With child seats installed in the outboard positions, there is only seven inches of clearance between the two child seats for the center rear occupant.  This is clearly insufficient and unsafe, as illustrated by the following:







45.    As a result, Plaintiffs and members of the proposed classes cannot safely transport three passengers in the backseat of the CR-Vs.

46.    This situation prevents CR-V passengers from complying with the safety warnings about the use of car seats and seat belts in the Manuals and pursuant to state law, and presents a safety hazard to passengers in the backseat of the CR-Vs.

47.    Accordingly, Defendant's statements in its internet advertising, specifications, and on the presentation of the Vehicle itself, that the CR-V has a seating capacity of five with three-point seat belts at all seating positions, are false and deceptive because AHM omits material information or makes partial representations while suppressing and omitting the material fact that the three backseat seat belts can never, from a reasonable consumer's perspective, safely be used simultaneously.

48.    The defect is always present and occurs through normal and foreseeable use of the Vehicles.

**Plaintiffs' Experiences With Their CR-Vs**

    **Schepler**

    49.    On or about December 19, 2017, Schepler purchased a model year 2018 CR-V from Brian Bemis Honda Mercedes Benz Volvo in Sycamore, Illinois, an authorized agent of Defendant (the "Illinois Dealership"). One of the reasons Schepler purchased the CR-V was the fact that he has five grandchildren and he wanted a vehicle with a seating capacity of five so that he and his wife could safely transport their family, including their grandchildren, in their car seats.

    50.    Prior to purchase, on November 30, 2017, Schepler reviewed an online brochure published by Defendant, titled MY_18_CR-V_Brochure_Online_Mech1, which, among other things, touted the Vehicle's safety and represented that the CR-V had "spacious seating for five" and "seats five comfortably." Schepler relied on this brochure and the presentation of the Vehicle itself as having three rear seatbelts (which impliedly could be used safely at the same time) in making his purchase.

    51.    Soon after his purchase, Schepler realized that the rear driver's-side seat belt buckle was "backward" and that the rear driver's-side passenger could not buckle his or her seat belt safely and without overlapping the middle passenger's anchor buckle.

    52.    Concerned for the safety of his backseat passengers, Schepler took his CR-V to the Illinois Dealership on May 10, 2018, for the Illinois Dealership's recommendation on how to address or repair the issue.

    53.    The Illinois Dealership photographed the buckle configuration and sent that picture to Defendant. After attempting to sit three in the backseat, the Illinois Dealership also explained to AHM that the CR-V "cannot have three rear passengers in the backseat at the same time per Honda rep." The Illinois Dealership also noted that the seat belts overlap and twist, posing a "safety

concern per the owner's Manual."  A copy of the service invoice is attached hereto as Exhibit 1.

54.     Defendant would not repair the seatbelts or otherwise correct the defect in the CR-V in order to permit Schepler to safely seat three backseat passengers, including in child seats, simultaneously, and refuses to do so.

55.     Schepler would not have purchased the CR-V, or would not have paid the purchase price that he did, had he known that the CR-V did not have the full seating capacity that he relied on when purchasing it and that, from a reasonable consumer's perspective, he would not be able to safely transport three passengers, including with car seats, simultaneously, in the backseat of his CR-V.

56.      Had AHM provided this material information on its online brochures or on the Monroney Sticker (or elsewhere), Schepler would have seen the information and been able to use it to avoid purchasing the Vehicle.

**Garcia**

57.     On or about March 3, 2018, Garcia purchased a model year 2018 CR-V from Clawson Honda in Fresno, California, an authorized agent of Defendant (the "California Dealership").  One of the reasons Garcia purchased the CR-V was the fact that he has two young children using car seats, and he wanted a vehicle with a three-passenger seating capacity in the rear so that either he or his wife could sit with and tend to the children while in transit.

58.     In the two months prior to purchase, Garcia reviewed and relied on Defendant's representations regarding the CR-V's five-person seating capacity on Defendant's website, at the California Dealership, and the presentation of the Vehicle itself when he went to purchase the Vehicle.

59.     Soon after purchase, Garcia also realized that the rear driver's-side seat belt buckle was "backward" and that the rear driver's-side passenger could

not buckle his or her seat belt without overlapping the middle passenger's anchor buckle.

60.     Concerned with the inability to safely seat a third passenger, Garcia took his CR-V to the California Dealership on or about April 10, 2019, for the California Dealership's recommendation on how to address or repair the issue.

61.     The California Dealership inspected Garcia's CR-V but "could not confirm any installed buckles that are incorrect" after "check[ing] some model vehicle 2018" and finding "the buckles are the same."  A copy of this service invoice is attached hereto as Exhibit 2.

62.     On or about June 6, 2019, Garcia sent a letter to Defendant informing it of the issues.  Defendant did not repair the seatbelts or otherwise correct the defect in the CR-V in order to permit Garcia to safely seat three backseat passengers, including in child seats, simultaneously, and refuses to do so.

63.     Garcia would not have purchased the CR-V, or would not have paid the purchase price that he did, had he known that he would not be able to use the CR-V's full seating capacity and would not be able to safely transport three passengers, including with car seats, simultaneously in the backseat of his CR-V, from a reasonable consumer's perspective.

64.     Had AHM provided this material information on its website, online brochures or on the Monroney Sticker (or elsewhere), Garcia would have seen the information and been able to use it to avoid purchasing the Vehicle.

65.     Plaintiffs both bargained for a five-passenger vehicle where three people could sit in the rear safely, without the belts and buckles overlapping and twisting.

66.     Plaintiffs continue to be presented with Honda's representations about its vehicles, including the CR-Vs.  Plaintiffs desire to purchase and use a Honda vehicle that is suitable for safely transporting three passengers, including

those in car seats, in the back seat, and would purchase a sports utility vehicle from Honda if it made full disclosures regarding the rear seat belt configuration and safety and sold a vehicle that can transport three passengers, safely, in the back seat.  Schepler's desire is based on the number of his grandchildren and need to transport all of them safely, while Garcia's desire is based on the number of his children and the need to transport all of them safely.

67.     Given Defendant's material omissions, however, Plaintiffs have no way to determine whether any of Honda's representations about the actual seating capacity of the CR-V, or any of its other vehicles, are, in fact, complete or true.

## AHM's Compliance With Federal Motor Vehicle Standards Does Not Indicate The Seat Belts Are Safe

68.     The federal statutory scheme that gives rise to the Federal Motor Vehicle Safety Standards ("FMVSS"), including FMVSS 208, 209, and 210, which are implicated with respect to the rear seat belts at issue, defines the term "safety standard" as a "minimum" one: "Motor vehicle safety standard" means a minimum standard for motor vehicle or motor vehicle equipment performance. See 49 U.S.C § 30102 (a)(10).

69.     The objective of a crash test for Federal Motor Vehicle Safety Standard No. 208 is to determine how well a passenger vehicle would protect its occupants in the event of a serious, real-world frontal crash. This is sometimes referred to as the crashworthiness of a vehicle. https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/nprm_208_0.pdf.

70.     FMVSS 209, Seat Belt Assemblies, specifies requirements for seat belt assemblies used in passenger cars, multi-purpose passenger vehicles, trucks, and buses.  The standard requires that a seat belt assembly shall be designed for use by one, and only one, person at any one time. https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/tp-209-

08_tag.pdf#:~:text=FMVSS%20209%2C%20Seat%20Belt%20Assemblies,person%20at%20any%20one%20time.

71.     FMVSS 210 establishes requirements for seat belt assembly anchorages to ensure their proper location for effective occupant restraint and to reduce the likelihood of their failure.

https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/tp-210-09a_tag.pdf#:~:text=FMVSS%20210%20establishes%20requirements%20for,MPVs)%2C%20trucks%20and%20buses

72.     The FMVSSs are minimum performance standards, not seat belt design regulations.  The National Highway Traffic Safety Administration ("NHTSA") does not certify that vehicles or items of motor vehicle equipment meet the requirements of various FMVSSs.

73.     Compliance with an FMVSS does not mean that the design chosen for the Vehicles is presumptively safe.  In fact, Congress also gave the NHTSA the power to order manufacturers to issue safety recalls, to notify owners about safety-related defects and to remedy the defects, notwithstanding the vehicle's compliance with the FMVSSs.

74.     Further, the NHTSA has made it clear that compliance with an FMVSS is not a defense in a product liability lawsuit.  *See* 49 U.S.C. § 30103(e).

75.     Despite the NHTSA's consistent position, many manufacturers treat the FMVSSs as ceilings on safety performance rather than as floors from which to improve safety.  When products are engineered with narrow compliance margins, the level of safety risk increases, even if the product is in technical compliance with the minimum standard.

76.     For example, as of mid-2019, certain safety features that are now standard in front seat belts are lacking in the rear seat belts of most vehicles, including Honda vehicles.

https://www.nytimes.com/2019/06/12/business/seatbelts-back-seat-safety.html.
The rear seat belts are not tested dynamically, only statically, but despite that,
the vehicles can still meet federal safety standards, which are the minimum level
of protection. *Id.*

77.     A vehicle that achieves so-called industry awards, determined by
criteria that does not include rear seat belt testing, does not demonstrate that the
vehicle is safe or that the rear seat belt configuration is safe.

78.     As a result of the limited nature of the FMVSSs in dealing with rear
seat belt safety, meeting the FMVSS is not a demonstration of the safety of the
rear seatbelts in the CR-V.

79.     The seat belt designs of other vehicles that briefly included similar
overlapping seat belt configurations to that at issue with the AHM vehicles
(2017 and 2018 Toyota Rav-4, Nissan Rogue, and Chevrolet Equinox) were all
changed for the 2019 models and have each reversed the overlapping buckle
configuration that AHM still utilizes in the Vehicles.

**AHM'S Exclusive Knowledge of the Defect**

80.     AHM had exclusive knowledge of the problems with the rear seat
belt configuration at issue (where the buckle positions for the rear center seat
and the rear left seat are inverted) well before the 2017 model year Honda CR-V
was released in the United States.

81.     Consumers had complained of a similar design in the 2015 model
year Honda Fit, necessitating AHM to respond to an inquiry by the NHTSA and
to release service bulletins informing consumers that the inverted and crossed
design was intentional.  Apparently dismissing those consumer complaints,
AHM introduced the 2017 model year Honda CR-V with a rear seat belt
configuration with inverted and crossed belts that are even harder to buckle.

82.     Honda Research and Development in Japan ("R&D") changed the
design of the 2017 CR-V to encase (in a rubber boot) the seat belt assembly that

was not encased (or fixed) on prior models, and added webbing material in a failed attempt to make the seat belt assembly easier for the customers to use. This attempt failed to address the safety defect inherent in the seat belt assembly.

83.     Honda R&D in Japan was aware, prior to the release of the Vehicles in the United States, that the rear seat belts twisted and overlapped.

84.     AHM was aware, prior to the release of Vehicles in the United States, that the rear seat belts twisted and overlapped.

85.     AHM knew that the boot made some child seats difficult to install, and that the condition made the rear seat belt configuration unusable for three passengers, but still continued to advertise and sell the CR-V as a five-seater, without disclaimer or any other qualification.

86.     AHM engineers had identified and discussed the problems with crossing and overlapping of the rear seat belts with Honda R&D before the Vehicles were sold in the United States, at which time the early versions of the new models were reviewed for any problems before their sale in the United States.

87.     Despite its concerns and requests for a change in design by AHM engineers, AHM brought the Vehicles to market in the United States and presented and advertised the CR-V as a five-seater, without disclaimer or any other qualification.

88.     In December 2016, a few days after the Vehicle's release in the United States, AHM again contacted Honda R&D in Japan for assistance in responding to customer concerns that the "rear seat belt buckles [were] crossed" and "the buckles are reversed for the left and middle passengers."

89.     AHM and Honda R&D in Japan knew of the defective design and safety issues with the rear seat belt design prior to the Vehicle's sale in the United States.

90.     Based on directives and information it received from Honda R&D in Japan, AHM told its dealers and consumers that the cross-over and overlapping configuration was based on a "regulation" dictating the seat belt design.  That was false, as there are no such government regulations, only an internal Honda R&D regulation.

91.     Honda R&D engineers may have tested the seat belt design against the Honda internal standard, but failed to do rigorous field or practical testing of the rear seat belt configuration, instead performing only static "informal fit checks" with no protocol on seat belt usability, insufficient human testing, and insufficient child safety seat testing; however, even that minimal static testing showed that child safety seats would overlap with the left rear buckle.

92.     AHM falsely and misleadingly omitted to tell its dealers and consumers in the United States that the so-called "regulation" upon which it based its rationale for the seat belt design was not a governmental regulation, but merely an internal design choice that had little to do with safety.

93.     Not surprisingly, AHM received, and continues to receive, complaints about the Vehicle's design, which began almost immediately after the 2017 model year Honda CR-V was released.  These complaints, which concerned safety issues, continued at least throughout 2017, 2018, and 2019.

**Class Members' Experiences With the CR-Vs**

94.     Plaintiffs' experiences mirror those of numerous other CR-V purchasers and lessees.  The internet contains numerous complaints from owners and lessees who, like Plaintiffs, were unable to ever safely seat all three backseat passengers simultaneously, including when using a car seat, because the seat belts caught, overlapped and twisted.  The following is a sample of complaints appearing in several online forums:

> Just picked my wife's new 2017 CRV Touring on 1/14/2017 and have issues with the 2nd row seating. The 2nd row center seat belt detachable anchor point and 2nd row left seat belt buckle seem to be crossed in the

lower seat. Is this a mfg. error or poor design makes it difficult for the left seat passenger to connect or disconnect their seat belt with the center passenger buckled in. Took the CRV back to the dealer today and they checked a number of 2017 CRV's on the lot and they are all the same, crossed over. Dealer told me they would contact Honda's support center and let me know in a few days. Seems like a NTSB safety recall or Honda TSB is needed to correct the issue. Has anyone heard back from Honda on the issue? I missing the reason for the crossed over design?

> **Posted by Ken R. on January 16, 2017 on http://www.crvownersclub.com/forums/27-miscellaneous-general-cr-v-discussions/129081-2017-crv-2nd-row-center-seat-belt-detachable-anchor-issue.html (last visited July 10, 2018).**

My brand new 2017 CRV touring appears to have the detachable anchor for the 2nd row center seat belt crossed with the 2nd row left seat belt buckle. This configuration causes the center belt and the left seat belt to cross one another and also makes it difficult for the left seat passenger to connect or disconnect their seat belt with the center passenger buckled in. This configuration does not allow the person sitting behind the driver to wear their seat belt when my child's infant seat is buckled into the center as the buckle cannot be accessed. This is a huge safety concern as I travel frequently with my infant daughter, son, and son's friend in the back seat. There have been multiple other complaints about this which can be googled. Something needs to be done here.

> **Posted by an anonymous CR-V owner in Verona, WI on January 26, 2017 on https://www.carcomplaints.com/Honda/CR-V/2017/seat_belts_air_bags/seat_belts.shtml (last visited July 10, 2018).**

The contact owns a 2017 Honda CR-V. [W]hile attempting to use the rear passenger side seat belt, it was discovered that in order to latch and secure the buckle, the belt had to under lap the rear seat center belt. The issue made it very difficult to lock and unlock the seat belt. The vehicle was taken to the dealer ([A]utonation Honda in [W]estminster, [CO]), but the cause of the failure was unable to be determined. The manufacturer was notified of the failure. The failure mileage was 6,000.

**Posted by an anonymous CR-V owner in Frederick, CO on May 1, 2017 on https://www.carcomplaints.com/Honda/CR-V/2017/seat_belts_air_bags/seat_belts.shtml (last visited July 10, 2018).**

I have the same issue. The dealer told me it's correct. But my passengers can't buckle in.

**Posted by teresalies on May 10, 2017 on http://www.crvownersclub.com/forums/27-miscellaneous-general-cr-v-discussions/129081-2017-crv-2nd-row-center-seat-belt-detachable-anchor-issue.html (last visited July 10, 2018).**

The rear left and middle seat belts overlap. The vehicle is advertised as a 5 seater vehicle but cannot safely be used for 5 passengers, or with a car seat in either of those seats with a passenger in the other one.

**Posted by an anonymous CR-V owner in Los Angeles, CA on May 13, 2017 on https://www.carcomplaints.com/Honda/CR-V/2017/seat_belts_air_bags/seat_belts.shtml (last visited July 10, 2018).**

Where left rear passenger attaches seat belt & where center rear passenger attaches seatbelt from headliner, the fasteners in the seat are switched. If center passenger buckles up first or if carseat is in center position it is nearly impossible for left rear passenger to buckle up or unbuckle. This is due to the attachment points being switched when designed [and/]or manufactured. Honda dealer says the connections are in proper location & belt is operating as designed. This will most likely cause one of five passengers in this vehicle to not be able to buckle up or unbuckle in an emergency[.]

**Posted by an anonymous CR-V owner in Baytown, TX on May 25, 2017 on https://www.carcomplaints.com/Honda/CR-V/2017/seat_belts_air_bags/seat_belts.shtml (last visited July 10, 2018).**

I just picked mine up last week and my 8 year old pointed out the seatbelt configuration. The dealer said that they were all like that but weren't sure why.

**Posted by mattkc2016 on October 18, 2017 on http://www.crvownersclub.com/forums/27-miscellaneous-general-cr-v-discussions/129081-2017-crv-2nd-row-center-seat-belt-detachable-anchor-issue.html (last visited July 10, 2018).**

2018 is still configured this way. How in the heck is it possible to correct this issue? This is supposed to be a five passenger vehicle but the belt layout just about makes that impossible. Honda needs to come up with a solution to this problem.

**Posted by Rudyjr on March 6, 2018 on http://www.crvownersclub.com/forums/27-miscellaneous-cr-v-discussions/129081-2017-crv-2nd-row-center-seat-belt-detachable-anchor-issue.html (last visited July 10, 2018).**

The rear center passenger's left seat belt buckle anchor is reversed making it nearly impossible to properly buckle 3 passengers in the back seat. This is a safety hazard as my center passengers, finding it a herculean feat when seated, often decline to buckle up. . . . [W]hen buckled [without] a passenger, the belts overlap. Because of this the center passenger's body prevents access to the buckle as it is hidden behind the strap of the left rear passenger.. . . .

**Posted by an anonymous CR-V owner on June 13, 2018 on https://www.vehie.com/complaints/honda?model=cr-v (last visited July 10, 2018).**

Seat Belt problem of the 2018 Honda CR-V 8:

**Failure Date:** 03/18/2018, Posted by an anonymous CR-V owner
The rear seat belt anchor is reversed on the center buckle. The anchor is on the center passenger's left side and the latch on their right. The rear driver's side passenger's latch is on their right, but on the far right side of the anchor. When a passenger or car seat is belted into the center seat, the seat belts obstruct each other, and when forced to latch, appear quite dangerous.

http://www.carproblemzoo.com/honda/cr-v/seat-belt-problems.php

Seat Belt problem of the 2017 Honda CR-V 20:

**Failure Date:** 10/06/2017, Posted by an anonymous CR-V owner
The left rear and center rear seat belt buckles, are opposite of what they

should be. This arrangement makes it impossible for the left rear passenger, to buckle up if the center seat person is buckled in, or a car seat is in place. Contacted my Honda service department and they forwarded my complaint to the district representative, his response was he is aware of the issue but there is no fix for the problem. I did some research and found that the Acura rdx is the same platform as the Honda Cr-v. So I visited the nearest Acura dealership, the seat belt buckle arrangement was correct on that Acura rdx. Looks like the anchor point and the buckles are exactly the same as the ones that are in my Honda Cr-v. Would be willing to bet that the Acura seat belt assembly would solve the rear seat belt issue on these Honda's, the assembly is only $66.00!

http://www.carproblemzoo.com/honda/cr-v/seat-belt-problems.php

95.    Similarly, there are also complaints about this issue on the NHTSA website:

**NHTSA ID Number: 11033850**
**Incident Date October 6, 2017**
**Consumer Location HOBART, WI**
**Vehicle Identification Number 5J6RW2H87HL****

"The left rear and center rear seat belt buckles, are opposite of what they should be. This arrangement makes it impossible for the left rear passenger, to buckle up if the center seat person is buckled in, or a car seat is in place. Contacted my Honda service department and they forwarded my complaint to the district representative, his response was he is aware of the issue but there is no fix for the problem. I did some research and found that the Acura RDX is the same platform as the Honda CR-V. So i visited the nearest Acura dealership, the seat belt buckle arrangement was correct on that Acura RDX. Looks like the anchor point and the buckles are exactly the same as the ones that are in my Honda CR-V. Would be willing to bet that the Acura seat belt assembly would solve the rear seat belt issue on these Honda's, the assembly is only $66.00! Why should i have to do that when it wasn't my mistake in designing it. .updated 11/09/17 *bf *JS Updated 7/27/18*JB"

**NHTSA ID Number:** 11024022
**Incident Date** May 1, 2017
**Consumer Location** FREDERICK, CO
**Vehicle Identification Number** 2HKRW2H82HH****

"TL* The contact owns a 2017 Honda CR-V. While attempting to use the rear passenger side seat belt, it was discovered that in order to latch and secure the buckle, the belt had to under lap the rear seat center belt. The issue made it very difficult to lock and unlock the seat belt. The vehicle was taken to the dealer (AutoNation Honda in Westminster, CO), but the cause of the failure was unable to be determined. The manufacturer was notified of the failure. The failure mileage was 6,000."

**NHTSA ID Number: 10994257**
**Incident Date May 13, 2017**
**Consumer Location LOS ANGELES, CA**
**Vehicle Identification Number 2HKRW1H8XHH****

"The rear left and middle seat belts overlap. The vehicle is advertised as a 5 seater vehicle but cannot safely be used for 5 passengers or with a car seat in either of those seats with a passenger in the other one."

**NHTSA ID Number:** 10981443
**Incident Date** April 27, 2017
**Consumer Location** RIVERSIDE, MO
**Vehicle Identification Number** 2HKRW2H55HH****

"Rear passenger seat behind driver and middle passenger seat belt fasteners are flipped. No one can sit behind the driver and use a seat belt."

**NHTSA ID Number:** 10968007
**Incident Date** January 26, 2017
**Consumer Location** VERONA, WI
**Vehicle Identification Number** 5J6RW2H96HL****

"My brand new 2017 CR-V touring appears to have the detachable anchor for the 2nd row center seat belt crossed with the 2nd row left seat belt buckle. This configuration causes the center belt and the left seat belt to cross one another and also makes it difficult for the left seat passenger to connect or disconnect their seat belt with the center passenger buckled in. This configuration does not allow the person sitting behind the driver to wear their seat belt when my child's infant seat is buckled into the center as the buckle cannot be accessed. This is a huge safety concern as i travel frequently with my infant daughter, son, and son's friend in the back seat. There have been multiple other complaints about this which can be googled. Something needs to be done here."

**https://www.nhtsa.gov/vehicle/2017/HONDA/CR-V/SUV/FWD;**
**https://www.nhtsa.gov/vehicle/2018/HONDA/CR-V/SUV/FWD#complaints**

96.     Faced with the continuous stream of safety complaints, AHM contacted Honda R&D on numerous occasions, reiterating the safety concerns and continuing to seek a design change from Honda R&D due to the safety issues.

97.     The information collected and sent by AHM engineers included confirmation of the service personnel at dealerships, as well as AHM field service employees who confirmed that the rear buckle and latch system was difficult to buckle and that the Vehicles can never, from a reasonable consumer's perspective, safely seat three rear passengers in the back seat at the same time.

98.     At least one AHM engineer personally tested the rear seating capacity, with and without child safety seats, and confirmed the rear buckle cross-over and that they are obstructed.

99.     Honda was exclusively aware that there were situations when the seat belt buckles were covered or hidden and three passengers could not safely sit in the rear seat, but Honda's response to that knowledge, according to the Honda R&D engineer who approved the seat belt design, was that, in situations where the seat belt buckle is hidden, no one should sit in that location.   No customer was given this information.

100.   Honda could have designated the CR-V as a four-seater, but chose not to, opting to present and advertise the vehicle as a five-seater.

101.   AHM failed to inform its customers of the seating capacity limitation of which it was aware, and continued to advertise and sell the Vehicles as able to safely fit five passengers.  Further, Honda's suggested solution to the inability to safety seat five (that only four people could buckle) is directly contrary to its continued promotion and representation of the Vehicle as having seating capacity for five and the response it gave to every customer that raised concerns about the seating capacity.  Thus, AHM withheld, and continues

to withhold, material and necessary information from Plaintiffs and Class members.

102.   It is foreseeable that one or more child seats will be used in the rear of a so-called five passenger vehicle.

103.   It takes more time for occupants to buckle and unbuckle in vehicles with crossed seat belts than in vehicles in which the seat belts do not overlap and cross.

104.   Plaintiffs and Class members complained to AHM, NHTSA, and elsewhere.  Defendant had knowledge that its misrepresentations and omissions regarding the 2017 CR-V being a five-seater were false and misleading and yet continues to make the same misrepresentations and omissions regarding the CR-V to Plaintiffs and Class members, although it is, in reality, a four-seater Vehicle.

105.   Defendant's marketing and advertising practices and its knowing omissions of material information are clearly meant to mislead consumers as to the seating capacity and passive safety features of the CR-V.  As a direct and proximate result of Defendant's conduct, Plaintiffs and the proposed classes have suffered and continue to suffer injury in fact, damage, ascertainable loss, and lost money.  Defendant, despite having knowledge that its representations and omissions about the Vehicle's seating capacity are misleading to Plaintiffs and the proposed classes, continues to market and advertise the CR-Vs in a deceptive manner.

106.   Plaintiffs and the proposed classes are at risk of suffering further injury if the relief sought is not granted.

**California Contacts**

107.   Defendant is headquartered in Torrance, California, located at 1919 Torrance Boulevard, Torrance, CA 90501.

108.   Defendant does substantial business in California, and a significant portion of the Vehicle sales are made in California.

109.   California hosts a significant portion of Defendant's U.S. operations, including sales and service offices and financial service offices, among others.

110.   In addition, the conduct that forms the basis for each and every Class member's claims against Defendant emanated from Defendant's headquarters in California and is consistent with directives of Defendant's personnel in California.

111.   Defendant's marketing and advertising personnel are located at its California headquarters, and the advertising and marketing schemes detailing the seating capacity and passive safety features of the CR-V were made and implemented from there.

112.   Defendant's California personnel implemented its deceptive advertising scheme and have refused to repair the seat belt misconfiguration in Plaintiffs' CR-Vs.

113.   Defendant's personnel responsible for communicating with dealers regarding known problems with defective vehicles are also located at its California headquarters, and the decision not to inform authorized dealers of the backseat seat belt buckle misconfiguration was made and implemented from there.

114.   Defendant has significant contacts with the State of California, and the conduct at issue herein emanated from California.

115.   As a result of Defendant's conduct, Plaintiffs and members of the proposed classes have suffered injury in fact and have otherwise suffered damages and been harmed and will continue to be harmed in the future unless Defendant is held accountable for its actions, and inactions, through this litigation.

116.   Plaintiffs seek injunctive relief, actual damages, disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the class, as defined herein.

## CLASS ACTION ALLEGATIONS

117.   Plaintiffs brings this lawsuit, both individually and as a class action, on behalf of similarly-situated purchasers and lessees of the CR-Vs, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

118.   Plaintiffs seek to represent the following respective classes defined as follows:

### Illinois Class (represented by Schepler)

**Illinois Consumer Fraud Class:**
All purchasers and lessees of a new 2017 or 2018 model year Honda CR-V in Illinois.

### California Classes (represented by Garcia)

**California Consumer Fraud Class:**
All purchasers and lessees of a 2017 or 2018 model year Honda CR-V in California.

**CLRA Subclass:**
All members of the California Consumer Fraud Class who are "consumers" within the meaning of California Civil Code § 1761(d).

Excluded from the Illinois Class and California Class (collectively, "Class" or "Classes") are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned. Plaintiffs reserve the right to amend the definition of the Classes if discovery and/or further investigation reveal that the Classes should be expanded or otherwise modified.

119.   **Numerosity/Impracticability of Joinder:** There are so many members of the Class that joinder of all members is impracticable. AHM sold more than 82,000 model year 2017 and 2018 CR-Vs in California and more than

30,000 in Illinois.  The members of the Class are readily identifiable from information and records in Defendant's possession, custody, or control.  The disposition of these claims will provide substantial benefits to the members of the Classes.

120.   **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the Classes.  These common legal and factual questions, which do not vary from members of the Classes, and which may be determined without reference to the individual circumstances of any members of the Classes, include, but are not limited, to the following:

a)   whether Defendant's marketing, advertising and promotion of its CR-Vs was false and misleading;

b)   whether Defendant omitted and concealed facts from Plaintiffs and members of the Classes about the safe seating capacity of the CR-Vs;

c)   whether Defendant knew, or should have known, that its representations were false, and that it omitted material information;

d)   whether Defendant's conduct was a violation of the ICFDBPA;

e)   whether Defendant's conduct was a breach of the Seat Belt Limited Warranty under Illinois law;

f)   whether Defendant's conduct was a violation of the CLRA;

g)   whether Defendant's conduct was a violation of the UCL;

h)   whether Defendant's conduct was a violation of the FAL;

i)   whether Defendant's conduct was a breach of the Seat Belt Limited Warranty under California law;

j)   whether Defendant's conduct as alleged herein violates public policy; and

k)   whether Plaintiffs and the members of the Classes are entitled to damages, restitution, equitable relief and/or other damages and other relief, and, if so, the amount and nature of such relief.

121.   **Typicality and Adequacy:**  Plaintiffs' claims are typical of the

claims of their respective proposed Classes, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Classes.  Plaintiffs do not have any interests antagonistic to those of their respective Classes. Plaintiffs' counsel are experienced in the prosecution of this type of litigation. The questions of law and fact common to the members of the Classes, some of which are set out above, predominate over any questions affecting only individual members of the Classes.

122.  **Superiority:**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for members of the Classes to prosecute their claims individually.  The litigation and trial of the Class-wide claims is manageable.

123.  Unless the Class is certified, Defendant will improperly retain monies that it received from Plaintiffs and members of the Classes as a result of its conduct.  Unless Defendant is required to change its unfair and deceptive practices, it will continue to commit these violations and the members of the Classes, and the general public, will continue to be misled.

124.  Defendant has acted and refused to act on grounds generally applicable to the California Class, making appropriate final injunctive relief with respect to the California Class as a whole.

**COUNT I**
**Violation of Illinois Consumer Fraud and Deceptive**
**Business Practices Act, 815 ILCS 505/2**
**On Behalf of the Illinois Class**

125.  Schepler incorporates by reference each and every preceding paragraph as though fully set forth herein.

126.  The ICFDBPA makes it unlawful to employ:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any

deceptive fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damage thereby.

815 ILCS 505/2.

127.   As detailed throughout this Complaint, Defendant misrepresented that the CR-Vs have a seating capacity of five with three-point seat belts at all seating positions, when, in fact, they do not, and omitted the material information that if there is one car seat, or if there are three backseat passengers, all three cannot simultaneously buckle their seat belts safely, without overlapping or twisting at least one of the seat belts, in direct contradiction to Defendant's marketing and advertisements.

128.   Defendant violated Section 505/2 of the ICFDBPA by misrepresenting that the Vehicle could safely fit three passengers in the rear seat and failing to provide Plaintiff and Class members with all of the facts about the rear seat belt configuration.  Specifically, Defendant failed to disclose that the Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.  Defendant made the misrepresentations and omissions described throughout this Complaint with the intent that Schepler and the Illinois Class rely on them and purchase or lease the CR-Vs.

129.   Schepler and the Illinois Class were damaged by Defendant's violations and would not have purchased or leased the CR-Vs, or would not

have paid the purchase price they did, had the facts been known.

**COUNT II**
**Breach of Seat Belt Limited Warranty Under Illinois Law**
**On Behalf of the Illinois Class**

130.    Schepler incorporates by reference each and every preceding paragraph as though fully set forth herein.

131.    As an express warrantor, manufacturer, and merchant, Defendant has certain obligations pursuant to its warranty to repair and replace defects. 818 ILCS 5/2-312 to 5/2-318.

132.    Defendant expressly warranted the seat belts, under the Seat Belt Limited Warranty, promising to repair or replace components that fail to function properly during normal use, for 15 years or 150,000 miles, and that warranty also states that "Honda believes that the best way to enhance your safety is to use your seat belt."

133.    However, Honda sells/leases its CR-Vs knowing that the Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.  Thus, Schepler and Illinois Class members are (and have been) deprived of one of the warranted safety features of the CR-V.

134.    The unsafe backwards configuration of the backseat seat belts at issue in this litigation was present at the time of sale and/or lease to Schepler and members of the Illinois Class.

135.    Defendant breached its warranties (and continues to breach its warranties) because it wrongfully, uniformly, and repeatedly refuses to repair the CR-V's backseat seat belts, forcing Schepler and the members of the Illinois Class to either only seat a maximum of two backseat passengers in their CR-Vs

simultaneously, or risk (in violation of Honda's own warnings) the safety of their passengers by having two of their backseat passengers use twisted, caught or overlapping seat belts.

136.   Schepler and the Illinois Class members use their CR-Vs in a manner consistent with their intended use and performed each and every duty required under the terms of the warranty including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

137.   Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

138.   In addition, upon information and belief, Defendant received numerous complaints, notice of the need for repair and resulting safety issue, and requests for warranty repairs and coverage from other members of the Class.

139.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the seat belt defect that was present as of the time of sale, which Defendant knew about prior to offering the CR-Vs for sale, and which Defendant did not disclose and did not remedy prior to sale (or afterward), is unconscionable, and Defendant should be estopped from pursuing such defenses.

140.   Further, any such effort by Defendant to disclaim or otherwise limit liability for the defect is null and void because Defendant and its authorized agents, the dealers, have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the seat belts and buckles.

141.   As such, Defendant should be estopped from disclaiming liability for its actions.

142.   Accordingly, Schepler and the Illinois Class members have suffered damages caused by Defendant's breach of the warranty and are entitled to recover damages as set forth herein.

**COUNT III**
**Violation of Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
**On Behalf of the California Class**

143.   Garcia incorporates by reference each and every preceding paragraph as though fully set forth herein.

144.   This cause of action is brought under the CLRA.  Garcia and members of the California Class are consumers as defined by California Civil Code § 1761(d), and the CR-Vs constitute goods within the meaning of the CLRA.

145.   Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale/lease of the CR-Vs to Garcia and members of the California Class in violation of, *inter alia*, the following provisions:

   a)   Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

   b)   Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

   c)   Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

   d)   Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

   e)   Representing that the goods have been supplied in accordance with a previous representation, when they have not (Cal. Civ.

Code § 1770(a)(16)).

146.   Garcia and other California Class members, in purchasing/leasing and using the CR-Vs, did reasonably act in response to Defendant's above representations or would have considered the omitted facts set forth herein material to their purchasing/leasing decision.  Garcia and the other members of the California Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

147.   The representations regarding the CR-Vs were material to Garcia and members of the California Class.  Defendant intended that Garcia and California Class members would rely on these representations and they did, in fact, rely on the representations and would have relied on the omitted facts had they been presented.

148.   In accordance with California Civil Code § 1780(a), Garcia and the members of the California Class seek injunctive relief for Defendant's violations of the CLRA.

149.   In accordance with California Civil Code §§ 1782(a) and (d), Garcia has provided Defendant with the appropriate notice and demand, but Defendant has denied the existence of a defect and refused to provide any relief to Garcia or the members of the California Class.

150.   Garcia seeks for himself and the California Class compensatory and punitive damages under the CLRA and also to recover attorneys' fees and costs pursuant to California Civil Code §§ 1780 and 1781.

## COUNT IV
### False and Misleading Advertising in Violation of California Business and Professions Code, § 17500, *et seq.*
### On Behalf of the California Class

151.   Garcia incorporates by reference each and every preceding paragraph as though fully set forth herein.

152.   Defendant's acts and practices as described herein have deceived

and/or are likely to deceive members of the California Class and the public.  As detailed throughout this Complaint, Defendant misrepresented that the CR-Vs have a seating capacity of five with three-point seat belts at all seating positions, when, in fact, they do not.  The Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers, because, when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.  This fact is in direct contradiction to Defendant's marketing and advertisements.

153.   By its actions, Defendant has and continues to disseminate uniform false advertising concerning the CR-Vs, which advertisements, by their nature, are unfair, deceptive, untrue, or misleading within the meaning of the FAL.  Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

154.   The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have the likelihood to deceive in that Defendant has failed to disclose the true and actual nature of the CR-Vs and omitted that they can never, from a reasonable consumer's perspective, safely fit three passengers in the rear due to the defective seat belt configuration.  Defendant has failed to initiate a public information campaign to alert consumers of the CR-Vs' true nature, which continues to create a misleading perception of the CR-Vs and their advertised safety features.

155.   In making and disseminating the statements alleged herein, Defendant should have known its advertisements were untrue and misleading, in violation of the FAL.  Garcia and the California Class members based their decisions to purchase or lease the CR-Vs, in substantial part, on Defendant's misrepresentations and omissions regarding the true nature of the seating capacity and safety features of the CR-Vs.  The revenues to Defendant attributable to the CR-Vs sold or leased using those false and misleading

advertisements amount to substantial monies paid for the Vehicles.  Garcia and the California Class were injured in fact and lost money as a result.

156.   Defendant intended for Garcia and California Class members to rely on these representations and omissions and Garcia and California Class members consequently did rely on Defendant's misrepresentations and omissions.

157.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and, therefore, are violations of the FAL.

158.   As a result of Defendant's wrongful conduct, Garcia and California Class members request that this Court enjoin Defendant from continuing to violate the FAL.  Such conduct is ongoing and continues to this date.  Garcia and the California Class are, therefore, entitled to the relief described below as appropriate for this cause of action.

**COUNT V**
**Unlawful, Unfair, and Fraudulent Business Practices in Violation of California Business and Professions Code § 17200, *et seq*.**
**On Behalf of the California Class**

159.   Garcia incorporates by reference each and every preceding paragraph as though fully set forth herein.

160.   The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

161.   Defendant violated, and continues to violate, the UCL by misrepresenting the CR-Vs as have a seating capacity of five with three-point seat belts at all seating positions, when, in fact, they do not, and omitting to inform its customers that the Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers, because, when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.  This

fact is in direct contradiction to Defendant's marketing and advertisements.

162.   By engaging in the above-described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL. Consumers have suffered a substantial injury they could not reasonably have avoided other than by not purchasing the CR-Vs.

163.   Defendant's acts and practices have deceived and/or are likely to deceive California Class members and the public and thus constitute a fraudulent business practice.  Defendant uniformly marketed and advertised its CR-Vs as having a seating capacity of five and having three-point seat belts at all seating positions, when, in fact, they do not, and omitting to inform its customers that the Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.

164.   As discussed above, Garcia and the members of the California Class purchased or leased CR-Vs directly from Defendant and/or its authorized agents.  Garcia and members of the California Class were injured in fact and lost money as a result of such acts of unfair competition.

165.   The injuries suffered by Garcia and California Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Garcia and California Class members should have or could have reasonably avoided.

166.   Defendant received the funds paid by Garcia and the members of the California Class.  Defendant profited by misrepresenting the properties of the CR-Vs that it otherwise would not have sold or leased.  Defendant's revenues attributable thereto are, thus, directly traceable to the substantial dollars paid out by Garcia and the California Class for the CR-Vs.

167.   Unless Defendant is enjoined from continuing to engage in the

omissions of material facts and the unlawful, unfair, and fraudulent business acts and practices as described herein, which conduct is ongoing, Garcia and the California Class will continue to be injured by Defendant's conduct.

168.    Defendant, through its acts of unfair competition, has acquired money from the California Class members.  Garcia and the California Class request this Court to enjoin Defendant from continuing to violate the UCL.

169.    The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date.  Garcia and the California Class, therefore, are entitled to relief described below as appropriate for this cause of action.

## COUNT VI
### Breach of Seat Belt Limited Warranty Under California Law
### On Behalf of the California Class

170.    Garcia incorporates by reference each and every preceding paragraph as though fully set forth herein.

171.    As an express warrantor, manufacturer, and merchant, Defendant has certain obligations pursuant to its warranty to repair and replace defects. Cal. Com. Code § 2313.

172.    Defendant expressly warranted the seat belts, under the Seat Belt Limited Warranty, promising to repair or replace components that fail to function properly during normal use, for 15 years or 150,000 miles, and that warranty also states that "Honda believes that the best way to enhance your safety is to use your seat belt."

173.    However, Honda sells/leases its CR-Vs knowing that the Vehicles can never, from a reasonable consumer's perspective, safely seat five passengers, because when there are three passengers (with or without one or more car seats installed) in the back seat of the CR-V, the three passengers cannot each buckle their seat belts safely.  Thus, Garcia and California Class members are (and have been) deprived of one of the warranted safety features of

the CR-V.

174.   The unsafe backwards configuration of the backseat seat belts at issue in this litigation was present at the time of sale and/or lease to Garcia and members of the California Class.

175.   Defendant breached its warranties (and continues to breach its warranties) because it wrongfully, uniformly, and repeatedly refuses to repair the CR-V's backseat seat belt, forcing Garcia and the members of the California Class to either only seat a maximum of two backseat passengers in their CR-Vs simultaneously, or risk (in violation of Honda's own warnings) the safety of their passengers by having two of their backseat passengers use twisted, caught or overlapping seat belts.

176.   Garcia and the California Class members have used their CR-Vs in a manner consistent with their intended use and performed each and every duty required under the terms of the warranty, including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

177.   Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

178.   In addition, upon information and belief, Defendant received numerous complaints, notices of the need for repair and the resulting safety issue, and requests for warranty repairs and coverage from other members of the Class. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the seat belt defect that was present as of the time of sale/lease, which Defendant knew about prior to offering the CR-Vs for sale/lease, and which Defendant did not

disclose and did not remedy prior to sale/lease (or afterward), is unconscionable, and Defendant should be estopped from pursuing such defenses.

179.   Further, any such effort by Defendant to disclaim or otherwise limit liability for the defect is null and void because Defendant and its authorized agents, the dealers, have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the seat belt buckles.

180.   As such, Defendant should be estopped from disclaiming liability for its actions.

181.   Accordingly, Garcia and the California Class members have suffered damages caused by Defendant's breach of the warranty and are entitled to recover damages as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Class, pray for judgment as follows:

a)   Certification of the Illinois Class under Federal Rule of Civil Procedure 23 and the appointment of Schepler as representative of the Illinois Class and his counsel as Class counsel;

b)   Certification of the California Class under Federal Rule of Civil Procedure 23 and the appointment of Garcia as representative of the California Class and his counsel as Class counsel;

c)   Compensatory and other damages for economic and non-economic damages;

d)   Awarding restitution and disgorgement of Defendant's revenues or profits to Plaintiffs and the members of the proposed Classes;

e)   An Order requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

f)   Statutory pre-judgment and post-judgment interest on any amounts;

g)    Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

h)    Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: December 8, 2020                     Respectfully submitted,

By: /s/ Kolin C. Tang
Kolin Tang
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email:  jshah@sfmslaw.com

Robert W. Murphy
MURPHY LAW FIRM
1212 SE 2nd Ave.
Ft. Lauderdale, FL 33316
Telephone (954) 763-8660
Facsimile: (854) 763-8607
Email:  rwmurphy@lawfirmmurphy.com

Ryan R. Frasher
THE FRASHER LAW FIRM, P.C.
3209 W. Smith Valley Road, Ste. 253
Greenwood, IN 46142
Telephone (317) 300-8844
Facsimile: (317) 218-4501
Email:  rfrasher@frasherlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*